THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* VIRGIL JACKSON, Appellant.

*It seems* the granting or refusal of a motion to postpone the trial of a criminal action is in the discretion of the court, and its decision thereon, where there is no abuse of discretion, is not reviewable upon appeal.

Where such an application is based upon the ground of the absence of a witness, it must appear to the court, *first*, that the witness is really material; *second*, that the party applying has been guilty of no neglect; *third*, that the witness can be had at the time to which the trial is deferred

The trial of an indictment for murder having been set down for a particular day the court ordered an adjourned term to be held on that day, and directed a specified number of trial jurors to be summoned to attend. These were drawn and summoned in the usual manner, and the court, because of their service during the four weeks session preceding, discharged the original panel from further attendance. *Held*, that this furnished no ground for a challenge "to the array and the panel of jurors;" that it was within the power of the court to excuse one or all of the jurors originally summoned and to summon any number of others it

deemed necessary. (Code Crim. Pro. §§ 358, 361; Code Civil Pro. §§ 34, 1033, 1058.)

*It seems* that if the dismissal of the regular panel was errorfeous, this was not a ground for a challenge to the panel. (Code Crim. Pro. § 361.)

A variance between the averment in such an indictment and the proof as to the day on which the crime was committed, is immaterial and may be disregarded, or the indictment may be amended. (Code Crim. Pro. §§ 293, 294, 295.) It is sufficient that the crime was committed at some time prior to the finding of the indictment and that it can be so understood from its allegations. (Code Crim. Pro. §§ 280, 284.)

With the consent of defendant, a photograph representing the place where the homicide was committed, was put in evidence. W., a witness for the prosecution, who was present when the photograph was taken and who had seen part of the affair from a window near by, placed three persons in the highway to represent the positions, which, according to his recollection the deceased, the defendant and another person present at the homicide occupied. W.'s testimony as to that fact was received under objection and exception. *Held,* no error

Defendant's counsel, under an offer to show that he carried the revolver with which the crime was committed to protect himself from a threatened assault by one W., offered proof of threats made by W. against defendant; there was no suggestion that these threats had come to defendant's knowledge. *Held,* that the offer was properly rejected.

(Argued October 12, 1888; decided November 27, 1888.)

APPEAL from judgment of the Court of Oyer and Terminer of the county of Oneida, entered April 20, 1888, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*A. D. Kneeland* for appellant. The court erred in granting the application for an order of continuance under the circumstances. (1 Burr. 510, 511 ; 1 Chit. on Crim. Law, 492 ; *Ogden* v. *Payne,* 5 Cow. 15 ; *Hooker* v. *Rodgers,* 6 id. 15 ; *People* v. *Vermilyea,* 7 id. 368 ; *People* v. *Horton,* 4 Park. Cr. 222 ; 1 Colby's Crim. Law, 308–310 ; *Comm.* v. *Knapp,* 9 Pick. 496 ; 66 Cow. 577.) It was error to discharge the regular panel of jurors, because of four weeks service, and make the additional panel a sole and separate panel, and the trial judge erred in overruling the challenge to the array and

panel of jurors. (*People* v. *Mallan,* 3 Lans. 224; *People* v. *Cummings,* 3 Park. 343.) The jury was not properly constituted. (Code of Crim. Pro. subd. 1, §§ 359, 361, 362; ·*People* v. *McCloskey,* 5 Park. 308 ; *People* v. *Cox,* 80 N. Y. 500 ; Co. on Litt. 158 a; 1 Arch. on Crim. Pl. 165, and note; 1 Denio, 281; 4 E. D. Smith's, 142; 1 Abb. 344; Colby's Crim. Law, 332; Laws of 1871, chap. 16, § 1 ; *Pierson* v. *People,* 79 N. Y. 428 ; *People* v. *Kenny,* 31 id. 330; *People* v. *Ferris,* 35 id. 129 ; *People* v. *Friery,* 2 Keyes, 424 ; *People* v. *Colt,* 3 Hill, 432; 1 Park. Cr. 611 ; 3 id. 343; 3 Lans. 224; Code, § 1171; 5 Park. Cr. 308; 53 N. Y. 165 ; 37 id. 405; 3 Hill, 194; 54 N. Y. 334; 1 id. 519; 2 Johns. 260; 25 Barb. 29 ; 4 Denio, 10; 3 Hun, 477; 96 N. Y. 116; 76 id. 279–283.) Under the variance in the indictment and the proof in regard to time, conviction was erroneous. (1 Bish. on Crim. Pro. §§ 386, 389 ; 4 N. Y. Crim. Rep. 547, 593 ; Code of Crim. Pro. § 280.) It was error in the trial judge to admit the evidence of the witness Wasmuth that he had placed persons, previous to the taking of the photographs, to occupy the positions claimed to have been occupied by the deceased, his wife and the defendant, during the struggle. (*People* v. *Ruloff,* 45 N. Y. 213 ; *Haynes* v. *McDermott,* 82 id. 42 ; *People* v. *Cowley,* 83 id. 465; 76 Penn. St. 340 ; 1 Abb. Ct. App. 453; 53 N. Y. 165; 2 id. 514; 20 Hun, 156, 166; 95 N. Y. 252, 316; 98 id. 56.) If the evidence falls within the range of ordinary intelligence, then it was not the subject of expert testimony. (96 N. Y. 408.) No evidence could be given merely for the purpose of establishing a tendency, on the part of the accused, of perpetrating a similar offense, or to show motive or intent, nor was it pertinent to the issues. It tended to degrade the witness, and he was privileged from answering. (24 N. Y. 298; 72 id. 571; 37 id. 309, 310; 76 id. 291; 56 id. 363 ; 87 id. 63; 53 id. 165; 93 id. 470; 94 id. 144; 1 Greenl. on Ev. 457; 107 N. Y. 427; 55 id. 81; 56 id. 591; 104 id. 481.) Specific acts cannot be shown. General bad character only is provable. (1 N. Y. 519; 58 id. 561; 4 Seld. 521; 95 id. 252; 47 id. 187; 98 id. 57; 54

id.° 334; 18 id. 546.) It was error in the trial judge to exclude the evidence, offered in the defendant's behalf, tending to show that one Wing had had trouble with the defendant, and had made threats upon Jackson's life, and that the defendant had armed himself through fear of Wing's threatened assaults. (36 N. Y. 431; 2 Colby's Crim. Law, 183, 194, § 8; 38 N. Y. 281; 44 id. 22; 14 id. 567; 66 id. 221; 2 Colby's Crim. Law, 187, 199, § 16; 96 N. Y. 340; 31 id. 330; 3 Wait's L. and P. [5th ed.], Presumptions, 427; 1 Greenl. on Ev., part 1, chap. 4, § 34; 65 N. Y. 322.) Premeditation and deliberation must both be proven. (88 N. Y. 117.) Neither of them can be deduced merely from the fact of homicide. (49 N. Y. 137; 53 id. 155; 106 id. 303.)

*Thomas S. Jones* for respondent. The weapon was selected and the shots discharged, with a palpable design to effect death; no other inference is reasonable. (*People* v. *Beckwith*, 103 N. Y. 366.) A rational agent must be taken to contemplate and intend the natural and immediate consequences of his own act. (*Foster* v. *People*, 50 N. Y. 609; *People* v. *Conroy*, 97 id. 77, 78.) While there must be deliberation and premeditation to constitute murder in the first degree, there is no time prescribed within which these operations of the mind must occur; it is sufficient if their exercise was accomplished and the deed was done, resulting in death. (*People* v. *Hawkins*, 109 N. Y. 411, 412; *Leighton* v. *People*, 88 id. 117–120; *People* v. *Beckwith*, 103 id. 178; *People* v. *Clark*, 7 id. 385.) To constitute murder in the first degree, a design to kill must precede the killing, but when the time is sufficient, it matters not how brief. (*People* v. *Majone*, 91 N. Y. 211; *People* v. *Keirnan*, 4 N. Y. Crim. Rep. 88, 91–93; *People* v. *Conroy*, 97 id. 62, 78, 79; *People* v. *Beckwith*, 103 id. 366–368; *Fiery* v. *People*, 2 Abb. Ct. App. Dec. 219; *People* v. *Jones*, 99 N. Y. 667, 668.) The killing was not in self-defense. The jury was authorized, in view of contradictions and interest, to discredit the whole or part of defendant's story, and rely on the proof of circumstances.

and eye-witnesses. (1 Greenl. on Ev. § 218; *People* v. *Beckwith*, 103 N. Y. 368.) Defendant did not attempt to escape or avoid attack, as he should have done. (*People* v. *Sullivan*, 7 N. Y. 396; *People* v. *Cole*, 4 Park. 35; *Shorten* v. *People*, 2 N. Y. 193–203; *People* v. *Beckwith*, 103 id. 366; Whart. on Crim. Ev. [9th ed.] § 69.) The jury had the right to consider this admission to call Mrs. Metcalf in determining the truth of defendant's story. (*Wyle* v. *N. R. R. Co.*, 53 N. Y. 156.) The contradictory statements made to Francisco and Munger, as compared with defendant's testimony, afford evidence of evil intent. (*People* v. *Conroy*, 97 N. Y. 80, 81.) The dismissal of the regular panel at the end of four weeks session of circuit, April seventh, was not ground of challenge to panel of jury. (Code of Crim. Pro. § 362; Code of Civ. Pro. §§ 34, 3350.) The rulings on challenges for principal cause and implied bias were right, but, as the defendant obtained a jury without having exhausted his peremptory challenges, an erroneous ruling in that behalf would not have injured defendant. (*People* v. *Carpenter*, 102 N. Y. 239–243.) The objections to evidence, and motion to discharge the prisoner because the indictment charged the crime to have been committed January 30, 1888, instead of January 29, 1888, were properly disposed of. (Code Crim. Pro., §§ 293–295; *People* v. *Johnson*, 104 N. Y. 213.) The defendant was not entitled to give declarations in his own behalf, after the commission of the crime. (*People* v. *Real*, 42 N. Y. 275, 279, 282.) The charge was correct as to deliberation and premeditation. (*People* v. *Conroy*, 97 N. Y. 78; *People* v. *Beckwith*, 103 id. 368; *People* v. *Majone*, 91 id. 211; *People* v. *Dimick*, 107 id. 13.) The judge correctly charged that the inference is if a man points a loaded revolver at the vital part of another, and fires a ball into him, knowing what he was doing, he intended to effect death. (*People* v. *Beckwith*, 103 N. Y. 366; *People* v. *Rogers*, 13 Abb. [N. S.] 376; *People* v. *Conroy*, 97 N. Y. 77.) A single phrase in a charge in a criminal action, isolated from the rest, if found to be erroneous, will not be ground for reversal, if the whole charge

properly instructs the jury, and it can be seen that the erroneous portion did not mislead the jury or influence the verdict. (*People* v. *Dimick*, 107 N. Y. 13–26.)

DANFORTH, J.   The matters to be determined relate to the rulings of the court upon questions raised by defendant's counsel before the commencement of the trial and during its progress.   The first was on an application to the court, made March 19th, for a postponement of the trial to the November term.   It was refused.   The court had power to grant the application, but the affidavits presented, apart from the absence of the witness, showed nothing more than that the private and personal convenience of the defendant or his counsel would be promoted by the delay asked, and the judge might well conclude that a failure to proceed would be inconsistent with the due course of public justice.   So far as the application depended on the absense of a witness, the case of *King* v. *D'Eon* (1 W. Black. 510), is in point.   Upon a like application Lord MANSFIELD said, " to put off a trial it must appear (1) that the witness is really material and appears to the court to be so ;  (2) that the party who applies has been guilty of no neglect ; (3) that the witness can be had at the time to which the trial is deferred ; " and I believe that nothing less than these concurring facts has at any time been held to be sufficient.   In the case before us the prisoner met none of the conditions.   His affidavit only averred " that there are two witnesses, ladies by the name of Harrington, who are material witnesses for deponent, without the benefit of whose testimony deponent cannot safely proceed to the trial of said indictment, as he is advised by his said counsel, after fully and fairly stating to him what he expects to prove by said witnesses, and as deponent verily believes.   That neither their names or addresses or residences can be learned, and he cannot procure their attendance at this term of court."

The affidavit of his attorney is, " that deponent was informed by several persons, and among others, witnesses who were sworn before the grand jury, that there was and is a person

who was an eye-witness to the transaction or alleged crime with which defendant stands charged, who ran away as soon as the shooting concluded, whose name is unknown, and whose residence is unknown, and who has not divulged his secret, so that either what he saw, his name or residence, can be learned; that such is the current rumor about the village where the alleged murder occurred," adding that in his opinion the " evidence of such witness is very material and essential to the defendant."

The question as presented hardly calls for the exercise of any legal discretion. It seems destitute of merit and not the proper subject of review upon appeal, but in view of the importance of the case we have considered it. The trial judge did not err in its decision.

*Second.* It is claimed that " the trial judge erred in overruling the challenge to the array and panel of jurors." .

It was alleged that the offense charged upon the defendant was committed in the town of Augusta, Oneida county, on the 30th of January, 1888. He was at once arrested and at the Oneida Oyer and Terminer, commencing March 12, 1888, indicted for murder. He was arraigned on the fifteenth of March. He plead not guilty, and his motion to postpone being denied, the trial was set down for April ninth. The court ordered an adjourned term of the Oyer and Terminer to be held on that day and directed one hundred and twenty-five trial jurors to be summoned to attend at that time. These were drawn and summoned in the usual manner, and the court, because of their service, discharged from further attendance all jurors of the original panel who had attended and served during the four weeks session of the court. The district attorney moved the trial of the defendant, and his counsel " objected to and challenged the array and the panel of jurors," upon various grounds, all of which, however, save one were afterwards abandoned, the prisoner's counsel stating " that his challenge was directed to and intended to raise the question as to the legality of the discharge by the court of the jury originally summoned for the Circuit and Oyer and Ter-

miner, and which, it was admitted in open court, were, after a four weeks session and service, discharged for the term and this present panel summoned in its stead."

The Code of Criminal Procedure permits a challenge to the panel (§ 361), but provides that "it can be founded only on a material departure, to the prejudice of the defendant, from the forms prescribed by the Code of Civil Procedure, *in respect to the drawing and return of the jury*, or on *an intentional* omission of the sheriff to summon one or more of the jurors drawn."

The objection now relied upon indicates no error. The dismissal of the regular panel, if erroneous, is not within the section cited. That, by explicit language, is confined to acts of omission from a prescribed procedure. In the Oyer and Terminer the trial jury is formed as prescribed in the Code of Civil Procedure (Code of Crim. Pro. § 358), and for that court, whether held by original appointment or by adjournment, any number of trial jurors may be summoned by direction of the court and whensoever it deems necessary. (Code of Civil Pro. §§ 34, 1058.) So, also, in the discretion of the court, a juror may be excused, and as one may be, so may all. (§ 1033.) Continued service by a juror for four weeks might reasonably lead the trial court to the conclusion that public interest, as well as that of the juror, required a change or permitted his relief.

*Third.* The indictment charged that the crime was committed on the thirtieth day of January; the evidence showed that it was, in fact, committed on the twenty-ninth of January. The variance was unimportant and properly disregarded. It is enough that the crime was committed at some time prior to the finding of the indictment, and that it could be so understood from its allegations. (Code of Crim. Pro. §§ 280, 284, sub. 3.) The indictment might, indeed, have been amended (Code of Crim. Pro. §§ 293, 294, 295), but that was not necessary for the preservation of any right of the defendant.

*Fourth.* That the court erred in the admission of evidence:

SICKELS—VOL. LXVI.     47

(1.) A photograph had been put in evidence, not only without objection from the defendant, but with his consent, to show the place where the homicide was committed. It represented a street scene, and among other houses the one occupied by the deceased in his life-time. Wasmuth, whose testimony is hereinafter referred to, from his own window had seen part of the affair and the situation of the parties. He was present when the photograph was taken, and placed three persons in the highway to represent the position which, according to his recollection, they occupied at the time in question. His testimony as to that fact was objected to, and its admission is assigned as error. The arrangement was not exact, but it was matter of description and served to indicate in a general way the impression left upon the mind of the witness. It aided his oral statement and was an essential and proper explanation of the circumstances attending the taking of the picture and of the picture itself.

(2.) The defendant visited the wife of Metcalf the night before the shooting, and remained in her bedroom for several hours; he was there, as on many former occasions he had been, for an illicit purpose, and evidence was given that the overcoat worn that night contained a stocking with a stone in it, described by the defendant as a slung-shot. It is now made a point that the defendant was not permitted to show why he carried it. This, if well founded, might present a serious question, but we have carefully examined the record, especially at the folios referred to by the defendant, and find no evidence of such exclusion.

*Fifth.* That evidence was improperly excluded.

(1.) The shooting was from a revolver, and the defendant's counsel, in answering the plaintiff's case, said : " I desire to show, if the court please, that Mr. Frederick Wing assaulted the defendant about July last in the saloon of Edward Wasmuth, in the village of Augusta Centre. That there they had a quarrel, Wing and the defendant, and that Wing threatened the defendant's life. I shall produce an array of witnesses to show that Wing threatened the defendant's life,

Opinion of the Court, per DANFORTH, J.

and has, repeatedly, since. That the defendant carried the revolver which he had on his person to guard against a threatened assault by Frederick Wing. As bearing upon the question of premeditation and deliberation in the carrying of this revolver, I desire to show the fact in reference to that assault, and of his threats; to show that one of those threats was made about a week before this homicide. I shall show that he purchased his revolver after that fracas." And the trial judge replied: "I do not think the evidence is admissible at this stage of the case, but I will allow you to proceed for the present on the line of the examination which you offer."

The defendant's counsel thereupon gave evidence by one witness of threats made by Wing to Jackson, and offered another to testify that he had heard from Wing similar threats. This was objected to and excluded. There was no suggestion that they had come to the defendant's knowledge. Without that they were unimportant, for, if not communicated to the defendant, they could have had no influence upon his conduct. It was, no doubt, competent for the defendant to explain the possession and carrying of the revolver, and he was not prevented by the court from doing so. But, although a witness in his own behalf, he gave no explanation of that fact until, on cross-examination, he was asked by the district attorney as to the occasion, and he explained, that a week before the homicide he had taken the revolver from his drawer and put it in the pocket of his "best pants," to take with him to his mill to see if he "could shoot a rat," and on the day in question he put on "the same pants," the revolver still remaining in the pocket. He made no mention of Wing, or apprehension of danger from any source.

*Sixth.* That there is no evidence of premeditation or deliberation. To us it seems otherwise.*     *     *     *     *     *

A jury might fairly say, not only that the pistol was with him as a mode of preparation, but that in the manner of possessing himself of it when its use was desirable in the perpetration

---

*·The omitted portion of the opinion is taken up with a consideration of the evidence upon the question of deliberation and premeditation.

of his design, there was manifested such exercise of thought and contrivance as denoted the presence of judgment and reason, rather than the violent and ungovernable passion, either of fear or anger. They have, indeed, said by their verdict that the circumstances of the case and the credible evidence point with irresistible force to a crime committed intentionally and with premeditation and deliberation.

Some other exceptions were taken by the learned counsel for the defendant. They are unimportant. No right of the defendant was prejudiced by any ruling during the trial; we find no misdirection on the part of the judge, nor any reason to doubt that the verdict was reached after a fair and full consideration of the case by the jury. We think that it reflects the very truth of the issue and justice requires that it should be made effective.

The judgment and conviction, therefore, should be affirmed.

All concur, except GRAY, J., not voting.

Judgment affirmed.