IN THE

# SUPREME COURT

OF

# OREGON

Argued July 30, decided August 25, rehearing allowed October 13, reargued
December 1, decided on rehearing December 15, 1908.

## STATE v. JU NUN.

[97 Pac. 96; 98 Pac. 513.]

CONSTITUTIONAL LAW—DUE PROCESS OF LAW—CRIMINAL PROSECUTIONS—
PROSECUTION ON INFORMATION.

1. A criminal prosecution begun by information filed by the district
attorney and the subsequent issuance of a bench warrant, as authorized by
Laws 1899, p. 99, providing for criminal prosecutions on informations made by
district attorneys, is not in violation of Section 18, Article VII, Constitution
of Oregon, providing for the summoning of grand jurors, or the Fourteenth
Amendment to the Constitution of the United States, declaring that no state
shall deprive any person of life, liberty, or property without due process of
law.

JURY CHALLENGE TO PANEL—STATUTORY RIGHT.

2. An objection to the individual jurors as their names are drawn from
the jury box, on the ground of the unconstitutionality of the law under which
the jury was drawn, is in effect a challenge to the panel, and such a challenge
is abolished by Section 117, B. & C. Comp.

SAME—"DE FACTO JURY"—"CHALLENGE."

3. Under Sections 117-123, B. & C. Comp., abolishing a challenge to the
panel, defining a challenge as an objection to an individual juror, either per-
emptory or for cause, and declaring that a challenge for cause is either that
the juror is disqualified from serving in any action or that he is disqualified
from serving in the particular action on account of bias, a litigant cannot
object to jurors summoned in the manner prescribed by law and accepted by
the court as legal jurors, on the ground that the law is unconstitutional, for a
jury, though selected in pursuance of a void law. is selected under color of
law and is a de facto jury, and, where the particular jurors so drawn are com-
petent and qualified, a challenge cannot be interposed.

HOMICIDE—DYING DECLARATIONS—ADMISSIBILITY.

4. Decedent was shot at night, and died the following afternoon. In the
morning, after his removal to a hospital, he made a statement as to the cause
and manner of the shooting. Before making the statement, the attending

physician had pronounced his case hopeless, and he was so informed by an interpreter, who testified to facts showing that decedent realized his conditio and the imminence of death. *Held*, that decedent's statement was admissible as a dying declaration, though he did not express a belief in the near approach of death.

SAME.

5. To render a statement of a decedent competent as a dying declaration, it is not necessary to show that he expressed a belief in the near approach of death, where his condition of mind is made apparent from his conduct and surrounding circumstances.

STATUTES—REPEAL—EFFECT.

6. The repeal of a law conferring jurisdiction takes away all right, both as to courts of original and appellate jurisdiction, to proceed under the repealed statute, as to all actions, suits, or proceedings pending at the time of the repeal, in the absence of a saving clause.

INDICTMENT AND INFORMATION—STATUTES—CONSTITUTIONAL PROVISIONS.

7. Constitution of Oregon, amended June, 1908, providing that no person shall be charged in any circuit court with any crime or misdemeanor, except on indictment found by a grand jury, was prospective in operation only, and did not repeal Laws 1899, p. 99, authorizing the district attorney to proceed by information, etc., except to deprive district attorneys of the right to proceed by information thereafter, and did not affect pending prosecutions by information.

WORDS AND PHRASES—"CHARGED."

8. The word "charged" as applied to criminal proceedings may have different meanings according to the text. It may mean the accusation which precedes the formal trial, or it may mean the responsibility for the crime itself, and may be applicable to one who has been convicted and is serving a sentence. In common parlance, its signifies the formal commencement of a criminal proceeding, by filing or returning of the accusatory paper.

From Multnomah: ARTHUR L. FRAZER, Judge.

The defendant, Ju Nun, was convicted of the crime of manslaughter, and from the sentence which followed, he appeals.

Statement by MR. CHIEF JUSTICE BEAN.

Pursuant to the provisions of the act of February 17, 1899 (Laws 1899, p. 99), the district attorney of the Fourth Judicial District filed an information in the circuit court of Multnomah County, charging the defendant with the crime of murder, without a preliminary examination and without any complaint having been filed against him. Upon the filing of the information, a bench warrant was issued by order of the court, and the defendant restrained of his liberty. He moved to set aside the

warrant of arrest and information on the ground. that the procedure adopted was violative of Section 18, Article VII, Constitution of Oregon, and section 1 of the Fourteenth Amendment of the Constitution of the United States. This motion was overruled, and defendant entered a plea of not guilty. In due time the cause came on for trial before a jury, whereupon he objected to each juror as his name was drawn from the jury box, on the ground that the law under which the jury was drawn was unconstitutional. These objections were overruled, and during the trial the State offered, and there was admitted over defendant's objection, an alleged dying statement of the deceased. The trial resulted in a verdict of manslaughter, and defendant was sentenced to the penitentiary, from which judgment he appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Henry E. McGinn, Mr. Martin L. Pipes* and *Mr. Ralph .E. Moody,* with oral arguments by *Mr. Moody* and *Mr. Pipes.*

For the State there was a brief over the. names of *Mr. John Manning,* District Attorney, *Mr. Andrew M. Crawford,* Attorney-General, *Mr. Isaac H. Van Winkle,* Assistant Attorney-General, and *Mr. J. H. Page,* Deputy District Attorney, with oral arguments by *Mr. Crawford, Mr. Page* and *Mr. Joel M. Long.*

Opinion by MR. CHIEF JUSTICE BEAN.

1. The questions raised by the motion to set aside the warrant of arrest and to quash the information were all discussed and decided adversely to defendant's position in *State* v. *Guglielmo,* 46 Or. 250 (79 Pac. 577: 80 Pac. 103: 69 L. R. A. 466) ; *State* v. *Tucker,* 36 Or. 291 (61 Pac. 894: 51 L. R. A. 246). The county court of each county is required to make up annually a jury list (Section 970 *et seq.,* B. & C. Comp.) from which the jurors for the circuit court shall be drawn by the county clerk

with the assistance of the sheriff or justice of the peace. Except in districts composed of no more than one county and having more than one judge of the circuit court, the assistance of the sheriff or justice of the peace shall be dispensed with, and the drawing shall take place in open court in the presence of one or more of the judges and under his or their directions. Section 978, B. & C. Comp. Multnomah County is the only county in the State constituting a judicial district and having more than one judge, and the contention for the defendant is that the law providing for the drawing of jurors in open court applies to that county alone, and is therefore a special or local law "regulating the practice in courts of justice," and for "summoning and impaneling jurors," and void under Section 23, Article IV, Constitution of Oregon, which inhibits the legislature from passing special or local laws in certain enumerated cases, including those above stated.

2. The constitutionality of the act is sought to be raised by an objection made on the trial to the individual jurors as their names were drawn from the jury box; and we do not think it can be so raised. The objection is in effect a challenge to the panel and not to the poll, and such challenge has been abolished by statute. Section 117, B. & C. Comp; *State* v. *Fitzhugh,* 2 Or. 227; *State* v. *Dale,* 8 Or. 229; *State* v. *Savage,* 36 Or. 191 (60 Pac. 610: 61 Pac. 1128). At common law, challenges to jurors were of two kinds—to the array or panel, and to the poll. A challenge to the array was grounded upon objections, which, if well taken, vitiated the whole panel or venire, and required its discharge. A challenge to the poll was an objection to a particular juror. As the entire office of summoning the panel of jurors was at common law committed to the sheriff or other summoning officer, a right of challenge to the array on the ground of partiality or other disqualification of the officer was of the greatest importance to litigants; but in this

country the statutes generally provide that the selection
shall be made by some designated officer or officers from
a previously prepared list. A right to challenge the
array is, therefore, of less importance than at common
law, and consequently it has been absolutely abolished
in some states (*Baker* v. *State,* 23 Miss. 243), and in
others the statutes have prescribed the grounds upon
which it can be made, and in such cases the challenge
can be made only upon the grounds enumerated. *State*
v. *Bates,* 25 Utah, 1 (69 Pac. 70) ; *People* v. *Schmidt,*
168 N. Y. 568 (61 N. E. 907) ; *People* v. *Jackson,* 111
N. Y. 362 (19 N. E. 54) ; *People* v. *Welch,* 49 Cal. 174;
*People* v. *Wallace,* 101 Cal. 281 (35 Pac. 862).

3. Our statute not only abolishes the right to chal-
lenge the array or panel, but defines a challenge as "an
objection to an individual juror," and prescribes the
grounds upon which it may be made. It is either per-
emptory or for cause. Section 119, B. & C. Comp. A
peremptory challenge is an objection for which no rea-
son need be given. *Id.* § 118. A challenge for cause is
either that the juror is disqualified from serving in any
action—that is, has been convicted of a felony, does not
possess the qualifications prescribed by law for a juror,
or is of unsound mind, etc.—or that he is disqualified
from serving in the particular action on trial on account
of implied or actual bias. *Id.* §§ 119-123, inclusive. These
are the only challenges to a juror allowed under our
procedure. It may be that, if persons were called or
summoned as jurors wholly without color of law, an
objection on that ground would be available to a litigant,
for in such a case the persons so called or summoned
would not be a jury either *de facto* or *de jure;* and this
is probably what Mr. Justice BOISE had reference to in
*State* v. *Dale,* 8 Or. 229, when he said that the challenge
in that case should have been made to the individual
juror that he was improperly or illegally drawn or sum-
moned. Where, however, the drawing and summoning

is under color of law and semblance of legal authority, and the jurors are accepted and treated by the court as legal jurors, they are at least such *de facto;* and it is not open to a litigant to object to their serving in a particular case on the ground that the law under which they were drawn is unconstitutional. The Constitution of New York prohibited the enacting of local laws for the selection and drawing of grand jurors. In 1881 the legislature passed an act regulating the drawing of such a jury in the county of Albany. The court declared the act unconstitutional, but that no substantial right of the defendant was invaded by holding him to answer to an indictment returned by the grand jury drawn in pursuance thereof. The court said the unconstitutionality of the law did not deprive the jury of the character of a grand jury in a constitutional sense; and, although selected in pursuance of a void law, it was selected under color of law and was a *de facto* jury. *People* v. *Petrea,* 92 N. Y. 128. And so in this case no constitutional or substantial right of the defendant was affected by the manner in which the jurors were drawn. The particular jurors were competent and qualified. This was sufficient.

4. It is next claimed that the court erred in the admission in evidence of the dying declarations of the deceased. He was shot through the lungs about 11 o'clock at night, and died the next afternoon. In the morning, after his removal to the hospital, he made a statement as to the cause and manner of his death; and it is the admission of this statement of which the defendant complains, on the ground that it did not appear that the deceased was under a sense of impending death at the time it was made. Before making the statement the attending physician had pronounced his case hopeless, and he was informed of that fact by an interpreter and that, in the opinion of the physician, he could live but a few hours. The interpreter says:

"The doctor told me to tell him about his going to die soon. I told him. The first time he didn't seem so full to realize it until the second time, and then the doctor said his case is very serious and there is no chance for him whatever. And I told him that again, and he became realized full about the fact. As far as I can remember about what he said—after I told him what the doctor said about his condition—then he said, I think it might be something like that, in those words, then he bowed his head that way [indicating], kind of shut his eyes and bowed his head to make peace, I think. That is as near as I can remember. He had such a sad feeling over him when .I told him what the doctor said. I saw his countenance much in such a deep sad feeling; and he shut his eyes and bowed his head. 'Maybe, maybe,' he repeated twice, I think. I suppose he intended to say something, but was too sad and could not say it. The Chinese, when they are sick and believe they are going to die, they will not say for the bad luck of it. They won't say that for anything. They are so superstitious about it."

This was, we think, a sufficient *prima facie* showing to entitle the statement to be admitted in evidence. *State* v. *Fuller,* 52 Or. 42 (96 Pac. 456) ; *State* v. *Doris,* 51 Or. 136 (94 Pac. 44).

5. The deceased was at the time dying from a gun shot wound, and knew that fact. He had been informed through the interpreter that in the opinion of the attending physician he could survive but a few hours; and from the testimony of the interpreter it appears that he realized and apprehended his condition and the imminence of death. It is true that he did not himself express a belief. in the near approach of death, but to render his statements competent as dying declarations it is not necessary that he should have done so. His condition of mind was quite apparent from his conduct and the surrounding circumstances. *State* v. *Fletcher,* 24 Or. 295 (33 Pac. 575).

Judgment affirmed.                     AFFIRMED.

Reargued December 1, decided December 15, 1908.

## ON PETITION FOR REHEARING.

[98 Pac, 513.]

Opinion by MR. CHIEF JUSTICE BEAN.

6. After the defendant had appealed, but before the disposition of the appeal, an amendment to the constitution was adopted (June, 1908) which provides, among other things, that "no person shall be charged in any circuit court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this State, except upon indictment found by the grand jury." It is now contended that by reason of this amendment the court is without jurisdiction, and must order a discharge of the defendant. It is settled that the repeal of a law conferring jurisdiction takes away all right to proceed, under the repealing statute, as to all actions, suits, or proceedings pending at the time of the repeal, unless there is a saving clause in the repealing statute, and this is so in an appellate as well as the court of original jurisdiction. 1 Lewis, Sutherland's Statutory Construction 553, 554; *Ex parte* McCardle, 7 Wall. 506 (19 L. Ed. 264); *Insurance Co.* v. *Ritchie,* 5 Wall. 541 (18 L. Ed. 540); *Sherman* v. *Grinnell,* 123 U. S. 679 (8 Sup. Ct. 260: 31 L. Ed. 278); *Keller* v. *State,* 12 Md. 322 (71 Am. Dec. 596); *State* v. *Allen,* 14 Wash. 103 (44 Pac. 121); *Mahoney* v. *State,* 5 Wyo. 520 (42 Pac. 13: 63 Am. St. Rep. 64); *Aaron* v. *State,* 40 Ala. 307; *Higginbotham* v. *State,* 19 Fla. 557.

7. The constitutional amendment in question did not in terms repeal the law conferring jurisdiction upon the courts to hear and determine causes in which a defendant had been accused of a crime by information filed by a district attorney prior to the adoption, and we do not think it does by implication. The Criminal Code of 1864 declares that no person can be prosecuted for the commission of a crime but upon the indictment of a grand

jury, unless otherwise provided by law. Hill's Ann. Laws 1892, § 1204. It also provides in detail for the drawing and forming of a grand jury, defines its powers and duties, provides the form of indictments and the manner of finding and returning the same, and for all subsequent proceedings thereon. In 1899 the legislature adopted, as it had power to do, an act, making it lawful for a district attorney to proceed, by information, against any person accused of the commission of a crime, without the intervention of a grand jury, and providing that the form of the information and the manner of setting out the acts constituting the crime should be substantially the same as provided in case of an indictment, and that from the time the information is filed it shall be construed like an indictment, and shall be deemed to be in all respects the same, and thereafter until, and including, final judgment and execution. Laws 1899, p. 99. This statute has not been repealed, and we think the recent constitutional amendment had no effect thereon, except to deprive a district attorney of the right to file an information in the circuit court by requiring that all prosecutions in that court thereafter instituted shall be by indictment. In all other respects the statute is in full force and effect, and the jurisdiction of the court to proceed with pending cases remains unimpaired. The language of the amendment is in the future tense, and is susceptible of a construction making it applicable to future and not pending cases, and it should be so construed (26 Am. & Eng. Enc. Law (2 ed.), 693; *Trist* v. *Cabenas,* 18 Abb. Prac. [N. Y.] 143; *Seattle* v. *O'Connell,* 16 Wash. 625: 48 Pac. 412), especially in view of the consequences which would result from the contrary view (*People ex rel.* v. *Potter,* 47 N. Y. 375).

8. It will be observed that the amendment does not provide that a person shall not be "tried" or "prosecuted" for a criminal offense, except upon indictment, but simply that he shall not be charged therewith. The

word "charged," as applied to criminal proceedings, may have different meanings, according to the subject-matter and the context. It may mean the accusation which precedes the formal trial, or it may mean the responsibility for the crime itself, and may be applicable to one who has been convicted and is serving a sentence. 2 Adj. Words & Phrases, 1069; *Drinkall* v. *Spiegel,* 68 Conn. 441 (36 Atl. 830: 36 L. R. A. 486). In common parlance it signifies the formal commencement of a criminal proceeding by the filing or returning of the accusatory paper. *People* v. *Garnett,* 129 Cal. 364 (61 Pac. 1114). When we speak of charging a person with the commission of a crime, we ordinarily mean the commencement of the proceeding, by the filing of a written complaint or accusation, and in our opinion it was in this sense that the words were used in the constitutional amendment in question. Hence, when it provides that no person shall be charged with a crime, except upon indictment, it means that no prosecution shall hereafter be commenced except in the manner stated, and does not refer to pending cases. The amendment does not repeal or change the law under which defendant was tried and convicted, nor makes that a criminal act which was innocent when committed, or change the punishment, or alter the rules of evidence, or in any other manner affect any substantial right of the defendant. It was a mere change in the procedure, and is prospective, not retrospective. *Smith* v. *Smith,* 38 Conn. 397.

Judgment affirmed.

FORMER OPINION ADHERED TO: AFFIRMED.