STATE OF OREGON, RESPONDENT, v. H. C. DALE, APPELLANT.

INDICTMENT—DISTINCT CRIMINAL ACTS.—Where the statute makes the commission of different acts a crime, and uses the word *or* connecting these acts, an indictment is good which charges the defendant with the commission of more than one of such acts, using the conjunction *and* to connect them in the indictment.

JUROR—OBJECTION TO PANEL.—Where an objection to a juror is that he is drawn from a particular panel, and not that the juror is personally disqualified or improperly summoned, such objection is a challenge to the panel.

SHERIFF—CONVERTING MONEY—PROOF OF SUMS COLLECTED.—In a prosecution of a sheriff for converting money collected by him as taxes, it is competent to show that he received sums of money from different individual taxpayers.

IDEM—CONVERSION OF PUBLIC MONEY IS LARCENY.—Money collected by a sheriff for taxes is the property of the county in the hands of the sheriff, and he may be guilty of larceny by converting the same to his own use.

APPEAL from Yamhill County.

The defendant was sheriff and tax collector of Yamhill county from July 1, 1876, to July 1, 1878. He was indicted by the grand jury of said county at the March term of the circuit court of said county for 1879, for larceny of public money.

The crime charged is described in the indictment as follows: "As such sheriff and tax collector of said Yamhill county, said H. C. Dale had received and had in his possession in said Yamhill county on the seventh day of August, A. D. 1878, the sum of three thousand dollars in gold and silver coin of the United States of America, belonging to and being the property of said county of Yamhill, which said money he had received and collected between the fifteenth day of September, A. D. 1877, and the seventh day of August, A. D. 1878, as taxes, assessed and duly levied by the county court of said county, and that the said H. C. Dale on the said seventh day of August, A. D. 1878, in said Yamhill county, state of Oregon, then and there being, and having in his possession said sum of three thousand dollars, which belonged to, and was the personal property of said

Yamhill county, Oregon, and which he had collected and received as taxes as aforesaid, did then and there fraudulently and feloniously, take, steal, make away with, embezzle and convert to his, H. C. Dale's, own use, the said three thousand dollars, and then and there neglected and refused to pay over, and does still neglect and refuse to pay over to said county of Yamhill, said three thousand dollars, or any part thereof, as by law directed and required; said county of Yamhill being all of said time a public corporation in the said state of Oregon, and the grand jury being unable to give or ascertain a more definite description of said money than that above given. Contrary to the statute," etc.

Upon the trial the jury returned the following verdict: "We, the jury in the above-entitled action, find the defendant guilty as charged in the indictment, and find that the amount of money converted was the sum of twenty-five hundred dollars."

The defendant was fined five thousand dollars and sentenced to five years' imprisonment.

The indictment is based upon section 559, page 414, of the criminal code, which is as follows: "If any person shall receive any money whatever for this state, or for any county, town, or other municipal corporation therein, or shall have in his possession any money whatever belonging to such state, county, town, or other corporation, or in which such state, county, town, or corporation has an interest, and shall in any way convert to his own use any portion thereof, or shall loan, with or without interest, any portion thereof, or shall neglect or refuse to pay over any portion thereof, as by law directed and required, or when lawfully demanded so to do, such person shall be deemed guilty of larceny," etc.

The appellant claims that this section does not include the acts of the tax collector, and that the appellant was liable only under section 65, p. 763, of the General Laws, which is in the following words: "The sheriff shall pay over all moneys collected by him, on any tax list in his hands, to the treasurer of the county at least once a month, taking a duplicate receipt for the same, which he shall file with the

clerk of the county court of his county immediately there-after; and any sheriff failing to comply with the provisions of this section shall be deemed guilty of a misdemeanor," etc.

The appellant further claims that the court erred in permitting the prosecution to show the receipt by the appellant of more than one sum of money from different persons; that if the appellant was guilty, the receipt of different sums from different persons on the conversion, constituted distinct offenses triable by separate indictments.

An exception was taken to the ruling of the court, upon a challenge to one of the jurors. The facts which explain this exception are stated in the opinion.

*R. Williams and McCain & Fenton,* for appellant.

*J. J. Whitney, District Attorney, and W. M. Ramsey,* for the state.

By the Court, BOISE, J.:

The appellant claims that the indictment in this case does not charge a crime. There was no demurrer filed to the indictment in the circuit court, and the appellant has, in the argument, failed to point out any defect in the indictment except this: It is claimed that it charges the defendant with converting the money and also with having failed to pay it over. Either of these acts would be a crime, and as he is charged with larceny by converting the money and failing to pay it over, we think a charge in this conjunctive form is good; if these acts had been charged in the disjunctive form, that he either converted or failed to pay over the money, the indictment would have been bad. In the case of *The State* v. *Carr,* 6 Or. 133, it is decided that "when a statute makes the commission of different acts a crime, and such acts are stated disjunctively in the statute, the indictment may, as a general rule, embrace the whole of such acts in a single count, but it must use the conjunctive *and* in the indictment when *or* occurs in the statute. The rule laid down in that case is applicable in this case, and tried by that rule this indictment is not bad for duplicity.

The next point argued as error is that the jury was improperly drawn.  It appears from the bill of exceptions that on the eighth day of October, 1879, the day the cause came on to be heard, the court made an order as follows:

" Order for thirty jurors, October 8, 1879.

"It appearing to the court that the number of jurors required by the code to attend the court have not attended, and that the panel is not full, it is ordered that the sheriff of this county summon forthwith, from the body of the county, thirty good and lawful men, having the qualifications of jurors, to serve during the term."

It also appears that these thirty jurors were summoned pursuant to said order and their names placed in the jury box, "there being in said box at the time, the names of twenty jurors of the required panel, who were in attendance to serve and who were serving as jurors.  The defendant, by his attorneys, objected to a jury for the trial of said cause being drawn from said box, and objected to each and every one of said jurors so drawn; but the court overruled the objection and the jury was drawn and impaneled from said box, to which ruling the defendant excepted."

The jurors whose names were in the jury box constituted the panel. (Stat. p. 142, secs. 178, 179.)  The objection was made to this panel as being illegally made, and the objection to each individual juror was made on the ground that he was drawn from this panel, and not on the ground that he was personally disqualified, or that he was biased.  We think the objections made to the jurors were challenges to the panel and not to the individual jurors.  If, when a juror was drawn, the counsel had objected to him for the reason that he was not one of the jurors on the regular panel, it would present a different question, and we might then be called on to decide whether the court had the authority to call jurors before those on the regular panel were exhausted.  There is nothing in the record showing whether the persons who were drawn as jurors were of the regular jurors or of those summoned by the order of the court.  We think that, in order to raise this question, the objection should have been made to the individual juror that he was improperly and

illegally drawn or summoned, for it may be that all the jurors who were drawn were of the regular panel... It is claimed that these names being placed in the jury box made the whole panel illegal, and was such an irregularity as will vitiate the verdict.

By the statute, when, for any reason, there is not a full panel, the court may order the sheriff to summon forthwith, from the body of the county, persons having the qualifications of jurors, to serve during the term. It appears in this case that the number of jurors required by the code did not attend, for there were but twenty regular jurors on the panel. So the court had the power, in part, to make up the panel. This power has, we think, generally been confined in the circuit courts to making orders to fill up the panel to twenty-four trial jurors, the number provided for in the code.

But the statute does not limit the order to that number in express words. Still, it would seem that the object of the statute was to enable the court to supply the panel with the number of jurors provided in the code to make a full panel. When, however, this power is exercised by the court, it is for the purpose of making the panel of jurors and the jurors added by the order of the court as much a part of the panel as those who have been regularly drawn from the jury list, and if there be irregularity in making up this panel, still the panel is not the subject of challenge, for challenges to the panel have been abolished. (*State* v. *Fitzhugh*, 2 Or. 272.) If the order was void by reason of having directed the summoning of thirty instead of four jurymen, we think that matter could only be taken advantage of by an objection to the individual juror, that he was not summoned as a juror and had no authority to sit.

We think that under section 178 of the code, the court may direct the sheriff to summon any number of jurors from the body of the county for the trial of a particular case, to be used when the regular panel is exhausted, and though we think there was an irregularity in this case, still it does not appear that a substantial right of the defendant was

affected by it, for it does not appear but what he was tried by jurors from the regular panel drawn from the jury lists.

After the jury was impaneled the prosecution offered record evidence to show that the defendant was, at the time he converted the money, the sheriff of Yamhill county. This was objected to by the defendant's counsel for the reason that it was incompetent. We think this evidence was competent to show in what capacity the defendant received and had the money. So, also, we think it was competent for the prosecution to prove the delinquent tax list filed by the sheriff, for this was an exhibit in his favor to show that he had not received all the taxes charged to him, and to charge him with the amounts which he by his entries thereon had charged himself with having collected. We think it was competent to prove, by any competent evidence, what sums the defendant had received at various times as sheriff, in order to show how much money belonging to the county came into his hands. He may have received sums with the intention to account for them and pay them over to the county treasurer. It was proper for the prosecution to show, by items received by him, the amount that came into his hands, and then show how much he paid over, to show the amount of his default; for if he returned a large sum of money belonging to the county, and refused to pay it over according to law, it was some evidence that he had converted it to his own use.

If an agent is accused of embezzling the funds of his employer, it would be competent to show that he received a sum from A. at one time and from B. at another, and that he had at another time converted both sums to his own use. The receipts would be lawful, and the crime consists in the unlawful commission, which may be one act. That is, an agent may be months in collecting the funds of his principle, and when he has a large amount collected, convert the aggregate to his own use at once.

Again, it is claimed by the appellant's counsel, that taxes, while in the hands of the sheriff, are not the property of the county. We think this position is not tenable. The sheriff is the agent of the county, and when he receives the

taxes and receipts for them, such taxes are the property of his principal, for it is a general rule that where an agent collects money for his principal, the money vests in the principal when received by the agent, according to the maxim, that what one does by his agent he does himself. The state tax due from each county, when paid to the state treasurer by the county treasurer, is the money of the county until paid to the state treasurer; and if destroyed by fire or act of God before being paid over, would be lost by the county; the property in money paid for taxes passes to the county when it is paid by the taxpayer to the sheriff, who is the officer and agent of the county.

It is further contended by the counsel for the appellant that as he collected the money as tax collector and sheriff, and failed to pay it over, he could only have been indebted under section 732 of the statute, which provides that "any sheriff who shall neglect or refuse to pay over all moneys by him collected for taxes, or shall refuse or neglect to make a return of the delinquent taxes of his county as required, * * * shall be liable to be indicted therefor, and upon conviction, may be punished by fine not less than one hundred nor more than one thousand dollars, or by imprisonment not less than six months nor more than six years." * * * This statute provides for punishing criminal negligence in the sheriff, and appellant might have been indicted under that section for failing to pay over the money by him collected as tax collector, although there was no conversion of the funds and no felonious intent.

Section 559 defines a higher and more heinous offense, and as both statutes were passed by the same session of the legislature, the presumption is that it was the intention of the legislature that both sections should stand. Section 559 defines a crime not mentioned in section 732, when it uses the words: "And shall in any way convert to his own use." * * * This makes the conversion of the public funds a crime, and this is the crime charged in the indictment, and for this the appellant could not be punished under section 732. It is true the section makes neglect or refusal to pay over, a crime of equal magnitude as conver-

sion, and uses the same language in defining it as in section 559. If section 732 was held to repeal that part of section 559 which makes a neglect or refusal to pay over a crime, it would leave the remaining portion of the section standing, and that remaining portion which provides against conversion would support this indictment. We think it was the intention of the legislature that both these sections should stand, and that they are in force, and that a sheriff is embraced in section 559 as much as any other officer, for he is included in the words "any person."

The points above discussed embrace all the important questions raised in the case, and as there is no substantial error, the judgment of the court below should be affirmed.