Argued and submitted May 5, affirmed August 16,
petition for rehearing denied September 20, 1983

## STATE OF OREGON,
*Respondent on review,*

*v.*

## GARY D. GORTMAKER,
*Petitioner on review.*

(TC 119905 / CA 19226,
TC 119906 / CA 19227,
TC 119907 / CA 19228,
SC 29266)
(cases consolidated)

668 P2d 354

John R. Faust, Jr., Portland, argued the cause for petitioner on review. With him on the petition and brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

William F. Gary, Solicitor General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Deputy Solicitor General, and Thomas H. Denney, Assistant Attorney General, Salem.

Before Lent, Chief Justice, and Linde, Peterson, Campbell and Jones, Justices.

JONES, J.

---

* Appeal from Marion County Circuit Court, Roland K. Rodman, Judge. 60 Or App 723, 655 P2d 575 (1982).

## JONES, J.

Defendant appeals his conviction for two counts of theft in the first degree and one count of official misconduct.[1]

The sole question upon which we allow review is whether the special grand jury which indicted the defendant was constitutionally selected under Article VII (Amended), Section 5, of the Oregon Constitution. The Court of Appeals held that the grand jury selection procedure violated the Oregon Constitution but the defendant's subsequent "reliable conviction" by a properly selected trial jury negated the constitutional violations and allowed the conviction to stand. We affirm the Court of Appeals decision, but for different reasons.

The defendant argues on constitutional grounds that the trial court erred in failing to quash the indictment on at least one of three grounds: (1) that grand jurors were selected from a petit jury panel in violation of Article VII (Amended), Section 5(1)(b), of the Oregon Constitution, (2) that the Marion County Court Administrator excused prospective grand jurors from the grand jury panel without authority of the court and for reasons not allowed by statute and this resulted in less than random selection, and (3) that because some grand jury members were not selected by lot from among all the jurors in attendance at the court as required by Article VII (Amended), Section 5(2), of the Oregon Constitution.

■ The state responds that the defendant is prevented from attacking the grand jury selection procedure because of the limitations of ORS 135.510(1), which reads:

"The indictment shall be set aside by the court upon the motion of the defendant in either of the following cases:

(a)   When it is not found, indorsed and presented as prescribed in ORS 132.360, 132.400 to 132.430 and 132.580.

---

[1] The Court of Appeals opinion states the defendant is appealing his convictions for theft in the first degree, tampering with public records, unsworn falsification, and official misconduct. The record indicates that the defendant was indicted for three counts of theft in the first degree, two counts of tampering with public records, two counts of unsworn falsification, and one count of official misconduct. The jury found the defendant guilty of all eight counts. The trial court issued three separate judgments. On one count of theft the defendant was sentenced to a discharge. On the official misconduct count, the defendant was sentenced to pay a $500 fine. The remaining six counts were merged on the state's motion into a single count of first degree theft for which the defendant was sentenced to a term of imprisonment not to exceed four years.

"(b)    When the names of the witnesses examined before the grand jury are not inserted at the foot of the indictment or indorsed thereon."

The state also takes the position that ORS 10.050(1),[2] as applied by ORS 132.030,[3] further prohibits the defendant's challenge to the procedure utilized for empaneling the grand jury. If the defendant were simply claiming that the state had violated a statute in the procedure that was utilized for empaneling the grand jury, we would be inclined to agree with the state that these statutes prohibit such a challenge. For over 100 years such an objection has been in effect a challenge to the panel and not to individual jurors and such a challenge has long been abolished by statute in Oregon. *See, State v. Fitzhugh,* 2 Or 227 (1867);[4] *see also State v. Dale,* 8 Or 229 (1880); *State v. Savage,* 36 Or 191, 60 P 610, 61 P 1128 (1900). A predecessor statute[5] was applied in *State v. Ju Nun,* 53 Or 1, 97 P 96, 98 P 513 (1908), where this court held that specific statutory challenges are the only challenges allowed to a grand jury. However, we did state "[i]t may be that, if persons were

---

[2] ORS 10.050(1):

"The court shall excuse a person from acting as a juror upon a showing of undue hardship or extreme inconvenience to the person, the person's family, the person's employer or the public served by the person. In applying this subsection the court shall carefully consider and weigh both the public need for juries which are representative of the full community and the individual circumstances offered as a justification for excuse from jury service. A person may request and be granted excuse from jury service under this subsection by means of telephone communication or mail."

[3] ORS 132.030 provides:

"Neither the grand jury panel nor any individual juror may be challenged, but the court may at any time after a juror is drawn refuse to swear him or discharge him upon a finding that the juror is disqualified from service for any of the reasons prescribed in ORS 10.050."

[4] Although the state has cited this case in support of its position, we read that part of the court's holding as obiter dicta because of the court's finding that the defendant failed to object at the time the grand jury was empaneled and sworn and was deemed to have waived any objections.

[5] General Laws of Oregon, ch 10, § 115, p 460 (Deady Code 1845-1864), provided:

"The indictment must be set aside by the court, upon the motion of the defendant, in either of the following cases:

(1)    When it is not found, endorsed and presented as prescribed in chapter VII of this code;

(2)    When the names of the witnesses, examined before the grand jury, are not inserted at the foot of the indictment or endorsed thereon."

called or summoned as jurors wholly without color of law, an objection on that ground would be available to a litigant, for in such a case the persons so called or summoned would not be a jury either *de facto* or *de jure." Id.* at 5. In *Ju Nun* we followed *State v. Dale, supra,* where we said if a juror were improperly or illegally drawn or summoned a challenge was available outside the statute. The *Ju Nun* court held "[w]here, however, the drawing and summoning is under color of law and semblance of legal authority, and the jurors are accepted and treated by the court as legal jurors, they are at least such *de facto;* and it is not open to a litigant to object to their serving in a particular case on the ground that the law under which they were drawn is unconstitutional." *Ju Nun,* 53 Or at 6.

In *State v. Carlson,* 39 Or 19, 25, 62 P 1016, 62 P 1119 (1900), we held pursuant to the statute:

"* * * No challenge shall be made or allowed to the panel from which the grand jury is drawn, nor to an individual grand juror, unless when made by the court for want of qualification as prescribed. The statute having thus imposed upon the court the duty of ascertaining the qualifications of grand jurors before accepting them, and prohibited all persons from challenging the panel or any individual grand juror, it remains to be seen whether the statute, in these respects, is *violative of any constitutional provision.* * * *" (Emphasis supplied; citation omitted.)

In *State v. Lawrence,* 12 Or 297, 7 P 116 (1885), a grand jury was empaneled under the authority of a statute which allowed the jurors to be selected several days prior to the start of the term of the court. Although the statute prohibited a challenge to the indictment on that ground, *see State v. Whitney,* 7 Or 386, 388 (1879), we found the statute under which the grand jury was selected violated Article VII (Original), Section 18, quashed the indictment and reversed the defendant's conviction. We held:

"* * * [I]t is the constitutional right of a defendant accused of a crime to demand that the indictment shall be found by a grand jury selected only as provided in the Constitution. * * *" *Lawrence,* 12 Or at 300.

Review of this court's rulings for over 116 years clearly reveals that if the defendant had restricted his attack to statutory grounds, he would be prohibited from attacking the procedure used in empaneling the grand jury. However, the

defendant has consistently argued that the selection procedure used in empaneling the grand jury which indicted him was in violation of the Oregon Constitution. Notwithstanding this position, the trial court, relying upon ORS 135.510, and the holding of *State v. Bock*, 49 Or 25, 88 P 318 (1907), found that the defendant was prohibited from attacking the grand jury selection procedure on constitutional grounds. The Court of Appeals disagreed and ruled the defendant could make a direct constitutional challenge to the procedure outside the complex maze of statutes, legislative history and court decisions surrounding statutory violations.

Since Oregon's grand jury is created in the constitution, we hold the grand jury procedure to constitutional requirements. Article VII (Amended), Section 5, of the Oregon Constitution, mandates the legislative assembly to provide by law for the selection and qualification of grand jurors. Article VII (Amended), Section 5, cannot be read as reserving to the legislature the power to enact statutes which serve to prevent constitutional challenges to grand jury procedures.

The defendant's attack is restricted to a constitutional challenge of the grand jury selection procedure. The defendant makes no claim of actual bias or prejudice of any of the grand jurors selected. Because Oregon's constitution has an express provision, Article VII (Amended), Section 5(1)(b), regarding the selection of grand jurors from a petit jury panel, we begin our discussion by tracing the history of the grand jury and in particular the underlying principles surrounding Article VII (Amended), Section 5(1)(b).

## HISTORICAL ROOTS OF THE GRAND JURY

The origin of the grand jury is veiled in obscurity.[6] It has never been resolved whether the idea developed from ancient Roman law,[7] whether it was a Norman institution introduced into England by William the Conqueror,[8] or

---

[6] *See* Forsyth, *Trial by Jury* (1875): "Few subjects have exercised the ingenuity and baffled the research of the historian more than the origin of the jury."

[7] Pollock & Maitland, *History of English Law*, Vol I, at 141 (2d ed 1898, reissued 1968).

[8] Edwards, *The Grand Jury*, 2 (1906).

whether it developed in England out of Anglo-Saxon institutions.[9] The earliest recorded juries were employed to investigate and answer inquiries addressed to them by the king:

"* * * The function of the jury of presentment [grand jury] shows that it is the lineal descendant of these juries. It is summoned to discover and present to the king's officials persons suspected of serious crime. It is probable that the regular use of the jury for this purpose in the royal courts dates from the Assize of Clarendon. * * * It made the use of the presenting jury general, both in the courts held by the king's judges and the sheriff's tourns. We have seen that both at the Eyre and the tourn presentments were made by representative juries from the hundred. These juries could present either from their own knowledge or from the information of others, just as at the present day the grand jury may present matters which they themselves have observed, or, as is more usual, may endorse the indictments or accusations made by others.

"We have seen that in the thirteenth century the jury was selected, as directed by the Assize of Clarendon, from the several hundreds. Juries of this kind were needed to answer the detailed enquiries contained in the articles of the Eyre. But, when the general Eyre ceased, when criminal justice had come for the most part to be administered by either the itinerant justices acting under more limited commissions, or by the justices of the peace in quarter sessions, the method of the selection of the grand jury changed. The sheriff was directed to summon for the business either of the assizes or of the quarter sessions twenty-four persons from the body of the county. From these, twenty-three are chosen, a majority of whom decides whether to 'find a true bill' or 'ignore' the accusations preferred.

"The presentments made by the grand jury do not and never did amount to an assertion that the person presented is guilty. They are merely an assertion that he is suspected. * * * [I]n the thirteenth and earlier part of the fourteenth century all or some members of the grand jury always formed part of the petty jury; and the judges sometimes considered that when the members of a petty jury who had presented a person as suspected, acquitted him, they had contradicted themselves, and could be punished. But, as the grand jury came to be separated from the petty jury, the distinctive character of their functions was more clearly realized. It came to be recognized that the function of the grand jury is merely to say whether

---

[9] *Ibid.* n 11.

from the evidence for the prosecution (at which alone they look) there is probable ground of suspicion." (Footnotes omitted.) Holdsworth, History of English Law, Vol I, p 321-22 (1922).

The criminal petit jury was preceded in historical development by the accusing (grand) jury and evolved from it. Holdsworth, *supra.* The Crown, interested in securing convictions, was opposed to the total elimination from the petit or trial jury of all the members of the presenting jury. "As Parning, J., said in 1340: 'If indicters be not there it is not well for the king.' Y.B. 14, 15 Ed. III (R.S.) 260." Holdsworth, *supra* at 325. "Gradually, however, the grand jury and the petty jury became separated, and the feeling against the practice of including indictors in the trial jury became so pronounced that in 1351-1352 a statute was enacted which prevented an indictor from sitting on the trial jury of one indicted for felony or trespass if the accused challenged him." Wayne L. Morse, *A Survey of the Grand Jury System,* 10 Or L Rev 101, 114 (1931).

A grand jury serves a high function. As stated in *United States v. Wells,* 163 F 313, 324 (DC Idaho 1908):

> "* * * It is a familiar historical fact that the system was devised to prevent harassments growing out of malicious, unfounded, or vexatious accusations. That it serves the purpose of allowing prosecutions to be initiated by the people themselves in no way detracts from the fact that it still stands as a safeguard against arbitrary or oppressive action * * *."

The same view was stated by Mr. Justice Field, sitting as Circuit Justice:

> "* * * In this country, from the popular character of our institutions, there has seldom been any contest between the government and the citizen which required the existence of the grand jury as a protection against oppressive action of the government. Yet the institution was adopted in this country, and is continued from considerations similar to those which give to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as the means of protecting the citizen against unfounded accusation, whether it comes from the government, or be prompted by partisan passion or private enmity." Quoted from 2 Sawy 668 in *United States v. Wells, Ibid.*

## OREGON'S GRAND JURY SYSTEM

Following considerable debate,[10] the framers of Oregon's Constitution created a grand jury system embodied in Article VII, Section 18, of the original constitution:[11]

> "The Legislative Assembly shall so provide that the most competent of the permanent citizens of the county shall be chosen for jurors; and out of the whole number in attendance at the court, seven shall be chosen by lot as grand jurors, five of whom must concur to find an indictment: but the Legislative Assembly may modify or abolish grand juries."

In 1899, the legislature authorized as an alternative to indictment by grand jury, prosecution on information of the district attorney. Or Laws 1899, p 99. A 1908 constitutional amendment repealed the 1899 statute prospectively and required indictment in all cases. In 1910, Section 18 was amended by Section 5 which substantially added language to the selection process providing:

> "* * * The Legislative Assembly shall so provide that the most competent of the permanent citizens of the county shall be chosen for jurors; and out of the whole number in attendance at the court, seven shall be chosen by lot as grand jurors, five of whom must concur to find an indictment. But provision may be made by law for drawing and summoning the grand jurors from the regular jury list at any time, separate from the panel of petit jurors, and for the sitting of the grand jury during vacation as well as session of the court, as the judge may direct. No person shall be charged in any circuit court with the commission of any crime or misdemeanor defined or made

---

[10] *See* Carey, *The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857* (1926) (printed under the direction of the Oregon Historical Society, in accordance with the provisions of Or Laws 1925, ch 379).

[11] We have reviewed the careful study conducted by Palmer, *The Sources of the Oregon Constitution,* 5 Or L Rev 200 (1926). In the opinion of this author, the article on the judicial department is a combination of:

> "(1) the minds of the members of the committee of the judicial department, (2) the judicial system in vogue under the territorial government, and (3) the Wisconsin judicial system as outlined in Article VII, Wisconsin Constitution of 1848. There are certain earmarks which seem to indicate that Article VII may be traced to the Wisconsin Constitution of 1848. At the outset it may be stated with confidence that the framers of the article were thoroughly familiar with the act of Congress passed August 14, 1848, entitled an Act to Establish the Territorial Government of Oregon."

punishable by any of the laws of this state, except upon indictment found by a grand jury: provided, however, that any district attorney may file an amended indictment whenever an indictment has by ruling of the court been held to be defective in form."

A 1927 amendment to this section permitted waiver of indictment by the accused, with power in the district attorney to then proceed by information:

"* * * No person shall be charged in any circuit court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this state, except upon indictment found by a grand jury; provided, however, that any district attorney may file an amended indictment whenever an indictment has, by ruling of the court, been held to be defective in form; provided further, however, that if any person appears before any judge of the circuit court and waives indictment, such person may be charged in such court with any such crime of misdemeanor on information filed by the district attorney * * *."

A 1958 amendment repealed Section 18 of Article VII (Original) and empowered the court to empanel more than one grand jury in a county. In 1974, Article VII (Amended), Section section 5, of the Oregon Constitution was repealed following a referendum vote by the people. The following section was adopted:

"(1)    The Legislative Assembly shall provide by law for:

"(a)    Selecting juries and the qualifications of jurors;

"(b)    Drawing and summoning grand jurors from the regular jury list at any time, separate from the panel of petit jurors;

"(c)    Empaneling more than one grand jury in a county; and

"(d)    The sitting of a grand jury during vacation as well as session of the court.

"(2)    A grand jury shall consist of seven jurors chosen by lot from the whole number of jurors in attendance at the court, five of whom must concur to find an indictment.

"(3)    Except as provided in subsections (4) and (5) of this section, a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury.

"(4)  The district attorney may charge a person on an information filed in circuit court of a crime punishable as a felony if the person appears before the judge of the circuit court and knowingly waives indictment.

"(5)  The district attorney may charge a person on an information filed in circuit court if, after a preliminary hearing before a magistrate, the person has been held to answer upon a showing of probable cause that a crime punishable as a felony has been committed and that the person has committed it, or if the person knowingly waives preliminary hearing.

"(6)  An information shall be substantially in the form provided by law for an indictment. The district attorney may file an amended indictment or information whenever, by ruling of the court, an indictment or information is held to be defective in form.

"(7)  In civil cases three-fourths of the jury may render a verdict." Or Const, Art VII (Amended), § 5.

Pursuant to this section, the defendant was indicted.

Of significance is that the 1974 amendment eliminated the constitutional requirement that the grand jurors should be selected from the most competent of the permanent citizens of the county, substituting a mandate to the legislative assembly to provide by law for selecting juries and the qualifications of jurors. ORS 10.110 (amended by Or Laws 1955, ch 717, § 1; Or Laws 1957, ch 393, § 1; and Or Laws 1973, ch 836, § 312) had previously substantially adopted the language from the constitution and no additional legislation[12] was required. ORS 10.110 provides:

"The county clerk of each county shall, at the first term of each year of the circuit court for the county, or in case of an omission or neglect so to do then at any following term, make a list of the most competent of the permanent citizens of the county by selecting names by lot from the latest voter registration lists or any other source which will furnish a fair cross section of the county wherein the court convenes, denominated a preliminary jury list. From the preliminary jury list the names of those persons known not to be qualified by law to serve as jurors shall be deleted. The remaining names shall constitute the jury list. The names of those persons deleted

---

[12] A review of the legislative history preceding this statute indicates that the major purpose of the legislation was to create a uniform method of preparing jury lists. Minutes, Senate Bill 49, Senate Judiciary Committee, Feb. 8, 1957.

from the preliminary jury list shall be placed on a separate list, denominated rejected prospective jurors, and opposite each name the reason for removing the name shall be set forth."[13]

## SELECTION OF THE SPECIAL GRAND JURY

We allowed review limited to the grand jury selection procedure and, consequently, a discussion of the facts involved in the offenses is unnecessary.

Defendant was the Marion County District Attorney from 1965 until his conviction. Following an investigation by Oregon's Attorney General, a special grand jury was empaneled in Marion County to investigate allegations of criminal conduct by the defendant largely occurring under the guise of his official position as district attorney. The special grand jury returned indictments which resulted in defendant's conviction. The Court of Appeals found "[t]he method of selecting this grand jury violated Article VII [Amended], Section 5(2), and the trial court erred in failing to quash the indictment." *State v. Gortmaker,* 60 Or App 723, 736, 655 P2d 575 (1982). However, the Court of Appeals upheld the defendant's conviction because the error "has not affected the fact-finding process" and he was "not prejudiced." *Id.* at 740.

Marion County is not unlike several Oregon counties which found it efficient to employ professional managers to administer the court's business. These "court administrators"[14] have had wide-ranging duties and responsibilities and accordingly were afforded some discretion to successfully accomplish their managerial tasks. The Marion County Court Administrator, among various other duties, was delegated by the circuit court the responsibility for summoning persons to serve on the county's grand and petit juries. Concurrent with this delegation of responsibility was a delegation of authority to make decisions regarding the process that would be used for the summoning of the jurors. In January, 1980, the Marion County Court Administrator summoned 250 persons pursuant to ORS 10.110, *infra,* for service on the jury panel of both the district and circuit courts for Marion County. Approximately

---

[13] ORS 10.110 was also amended by Or Laws 1981, ch 3, § 44, which has no relevance here.

[14] Various names may apply to the same position such as "jury supervisor," etc.; however, "court administrator" can be found in various statutes, *e.g.,* ORS 10.460.

70 to 95 actually reported for jury duty. The court administrator testified those excused from duty were excused for various reasons either by circuit or district court judges or by court administrative staff.[15]

Although the normal term of jury duty in Marion County is two months, this particular jury panel was extended by court order for four months in an effort to relieve the county of financial constraints. Some of the original 70 to 95 jurors were excused from further duty after having served four weeks, *see* ORS 10.050(3).[16] Some members were temporarily excused for personal reasons by a judge or court staff members.

The court administrator testified she received instructions from a circuit court judge to summon jurors for a special grand jury to hear evidence in the defendant's case. On May 21, 1980, the court administrator drew by lot the names of 10 prospective jurors for the special grand jury from all the original jurors remaining for jury duty known to be available for duty commencing May 27.[17] None of the jurors was physically present at the court during this selection. The selection was supervised by a circuit court judge. Of the 10 jurors selected by lot, five either could not be reached by the court staff or indicated that they would be unavailable for duty on May 27. The court administrator excused these five jurors.

On May 22, 1980, a court clerk selected four more jurors by lot from the initial group. Again, none of the jurors was physically present at the court at the time of the selection, and this selection was also supervised by a circuit court judge. The actual selection of the grand jury was to be made the following Tuesday, May 27, 1980.

---

[15] The court administrator testified that various reasons such as advanced age, health, inability to locate, and job conflicts formed the basis for the decision to excuse jurors.

[16] ORS 10.050(3):

"A person shall not be required to serve as a petit juror at any one term of the court for more than four weeks, and shall, upon application, be entitled to be discharged from further attendance upon the court as a juror at such term, after having served for a reasonable period of time, as determined by the court, not to exceed four weeks."

[17] The court administrator testified she was unable to recall how many prospective jurors remained at the time of the selection.

On Friday, May 23, 1980, the court clerk responsible for calling prospective petit jurors was told that juries for two district court cases would be needed the following Tuesday, May 27, 1980. (Monday, May 26, 1980, was a holiday.) By this time the number of regular jurors available for service, for unexplained reasons, had been reduced to some 30 to 40 jurors. The names were on a list. After calling the first 25 of the 30 to 40 persons whose names were on the list, the clerk was able to reach 18, who were requested to appear for jury duty the following Tuesday. Seventeen showed up on Tuesday.

On Tuesday, May 27, eight of the nine jurors selected on May 21-22, 1983, reported for duty. Two were excused by a circuit court judge after the court's voir dire. Finding it necessary to select one additional juror to complete the special grand jury, and an alternate, a judge's secretary obtained the names of the 17 jurors who had been called (as petit jurors) to hear district court cases, and from these 17 jurors the final grand juror was drawn by lot. These 17 jurors were physically present at the court during the selection which was supervised by a circuit court judge.

## IMPROPER EXCUSING ISSUE

■    The defendant argues that the court administrator excused prospective grand jurors from the grand jury panel without the authority of the court and for reasons not allowed by statute and consequently violated the defendant's constitutional rights. The record is not a model of clarity on this point, however there is adequate support to rebut the defendant's argument. ORS 10.050(1) states that "[t]he court shall excuse a person from acting as a juror upon a showing of undue hardship or extreme inconvenience to the person * * *." Although a judge did not personally excuse each juror, the facts indicate that the court administrator excused prospective jurors and did so pursuant to delegated authority. The extent to which the circuit court judges were consulted by the administrator's office during the initial panel selection process is disputed by the parties, although it appears the administrator handled most of the determinations of whether particular jurors were required to report for service, and there is some evidence that court administrative personnel excused some prospective jurors for non-statutorily defined reasons. There is no showing such exclusions were based on criteria reflecting either a discriminatory intent or effect. In these circumstances, we cannot

say any errors contravened the principle of objectivity or random selection or otherwise violated the constitution. The record indicates the court staff's actions were consistently monitored, controlled or ratified by one or more circuit court judges.[18]

## CONSTITUTIONALITY OF DRAWING GRAND JURORS FROM A PETIT JURY PANEL

■ We think it was with English history in mind[19] that the 1910 Legislative Assembly sought to insure that a member of an indicting grand jury would not be allowed to sit as a petit juror to judge the guilt or innocence of the one indicted. To insure that such an occurrence would not happen, those empowered with the selection of the members of the grand jury were constitutionally mandated to insure that no petit jury member had been on the indicting grand jury. In 1974, Article VII (Amended), Section 5(1)(b), continued this mandate by directing that grand jurors shall be selected by "drawing and summoning grand jurors from the regular jury list at any time, separate from the panel of petit jurors." We read this provision to operate in only one direction. A grand juror who sits on an indicting grand jury may not sit on the petit jury which hears the case against the same defendant. This does not mean, *ipso facto,* that one who has served on a petit jury during the term of a panel may not be selected to sit on a grand jury during the same term. We do not see how the defendant could be prejudiced by the presence of such a juror on the grand jury and

---

[18] ORS 10.330 provides in pertinent part:

"The county clerk shall, within one week after the court's adjournment, make and file in his office a certified list of all the jurors returned to the court, specifying:

(1) Those who were discharged for want of qualification, or by reason of exemption.

(2) Those who did not appear, or were discharged for any reason."

We have reviewed the certified list in the record and find plausible reasons for the excuse of the various jurors.

[19] As to the development of the grand jury as an institution here and in England, *see United States v. Johnson,* 319 US 503, 63 S Ct 1233, 87 L Ed 1546 (1943); *McGrain v. Daugherty,* 273 US 135, 157, 47 S Ct 319, 71 L Ed 580 (1927); *Blair v. United States,* 250 US 273, 282, 39 S Ct 468, 63 L Ed 979 (1919); *Hale v. Henkel,* 201 US 43, 59, 26 S Ct 370, 50 L Ed 652 (1906); 4 Blackstone Commentaries 301, *et seq.;* and further *see State v. Tucker,* 36 Or 291, 61 P 894 (1900), for Justice Wolverton's thoughtful discussion of the history of the grand jury.

believe our analysis to be consistent with the intent and spirit of the constitution. *See generally,* Comments, *Grand Jury Selection: Voter Registration Lists as a Cross Section of the Community,* 52 Or L Rev 482 (1973).

■      We find no constitutional infirmity resulting from the selection of the last grand juror from a petit jury panel.

### IN ATTENDANCE AT THE COURT ISSUE

■      The defendant contends that the grand jurors were not selected "from the whole number of jurors in attendance at the court." Article VII (Amended), Section 5(2).[20] The defendant suggests this constitutional provision means every prospective grand juror, be it the initial panel of 250, the reduced panel of 70 to 95, or even the 40 jurors, required by statute, ORS 10.220(1),[21] must be physically in the confines of the room in which the prospective grand jurors are selected. Defendant offers no explanation for the possible purpose that could be served by such a procedure and offers no authority in support of his position.

In *State v. McReynolds,* 212 Or 325, 328, 319 P2d 904 (1957), we held:

"* * * Casual reference to Oregon Constitution, amended Article VII, § 5, will disclose that there is no longer any constitutional requirement that grand jurors be chosen from the 'whole number in attendance at the court' if provision is otherwise made by law, as authorized in that section. We find no statute which has taken advantage of the alternative procedure authorized in that section and therefore we conclude that the grand jury which the court found to have been duly impaneled during the May 1956 term was chosen under the provisions of ORS 132.020. That section prescribes the method by which grand jurors shall be selected and may be accepted by the court from the jurors in attendance upon the court at the time of the selection. * * *"

Until the time that the circuit court judge actually selected the members of the grand jury they were merely "prospective grand jurors" and their physical attendance at the

---

[20] ORS 132.010 uses the language "drawn by lot from the jurors in attendance *upon* the court at the particular term." (Emphasis added.)

[21] ORS 10.220(1) provides in relevant part:

"For the circuit court, 40 names shall be drawn, from which number the grand jurors and trial jurors for the term are selected as provided by law. * * *."

court when their names were selected was unnecessary, not required by the constitution, and not required to avoid prejudice to the defendant. We think a reasonable interpretation of "in attendance at the court" in this context means summoned and under court supervision, but not necessarily physically present.[22] Consequently, we find no violation of the defendant's constitutional rights in this regard.

## RANDOM SELECTION

■        The Oregon Constitution, Article VII (Amended), Section 5(2), requires that the grand jury be "chosen by lot from the whole number of jurors in attendance at the court." ORS 10.220(1) directs that "40 names shall be drawn, from which number the grand jurors * * * for the term are selected * * *." The record in this case indicates that 70 to 95 jurors formed the original panel from which the grand jury members were selected at two separate drawings. In the second drawing, the seventh member was selected in the manner set forth at pages 20-21. It is this second drawing that requires close scrutiny.

One of the reasons underlying the constitutional and statutory requirements that the jurors be chosen by lot is to guarantee that the selection will be made in a random manner. Random selection is to prevent the hand-picking of some jurors or the systematic exclusion of others to obtain a fair cross-section of the community. *See, United States v. Davis,* 546 F2d 583, 589 (5th Cir), *cert den* 431 US 906 (1977). However, the fundamental purpose of the law is to prevent discrimination, whether it be on account of race, color, religion, sex, national origin, or economic status. Where the procedural errors made by those in charge of selecting jurors do not raise the possibility of defeating this goal, a court should be hesitant to order the drastic remedy of the dismissal of indictments.

We are satisfied that the selection of the seventh grand juror complied with the statute and constitution. The name was selected "by lot." The 17 names were selected on a Friday for petit jury service the next Tuesday. At that time, for reasons that are not clear from the record, there were but 30 to

---

[22] There are at least 38 statutes in Oregon which use the term "in attendance," ranging from ORS 21.460, "actually in attendance," to ORS 52.520, "then in attendance upon the court." Each must be viewed from a factual perspective.

40 regular jurors available for service the following Tuesday. The selection of the 17 names was not made with grand jury service in mind. The selection appears to have been made in a random manner in the sense that the clerk called names from the list of available jurors until 18 persons were reached. On the following Tuesday, when the grand jury selection procedure turned up one short, the name of the seventh grand juror was selected at random from the names drawn the previous Friday, who arrived on Tuesday.

There is nothing to suggest that the "whole number of jurors in attendance at the court" the previous Friday exceeded the 30 to 40 previously referred to. The selection appears to have been made in random fashion.

One result of requiring seven grand jurors to be chosen from a starting pool of 40, ORS 10.220(1), is the creation of a ratio of at least 7-in-40 (4.7-to-1), to insure a random cross-section of the community. In the instant case, when the final juror was drawn from the names of 17 who had been selected in an essentially random manner, the mathematical ratio increased to 17-to-1.

## CONCLUSION

■ The unique facts of this case allow the defendant a direct constitutional attack on his indictment. Unconstitutional grand jury selection proceedings cast doubt on the integrity of the whole judicial process, *compare, Peters v. Kiff,* 407 US 493, 92 S Ct 2163, 33 L Ed 2d 83 (1972), and cannot be tolerated in Oregon. But such was not the case here. We hasten to point out that every alleged misapplication of state law does not constitute an Oregon constitutional question. Technical violations of statute which result in grand juries which are drawn in a manner not strictly according to statute but result in proper persons being fairly drawn by lot will not necessarily result in standing to launch a constitutional attack to quash an indictment. Inconsequential statutory irregularities will not vitiate the indictment. *See, State v. Champeau,* 52 Vt 313, 36 Am Rep 754 (1880); *see also State v. Clark,* 141 Iowa 297, 119 NW 719 (1909) (that a grand jury list from which a panel was drawn contained 73 names, instead of 75, as required by law, did not affect its validity).

As we stated in *State v. Brumfield,* 104 Or 506, 511, 209 P 120 (1922):

"In this state the courts have always refused to allow mere technical objections to the method of impaneling a grand jury to enable a defendant to escape the consequences of a trial upon the merits. [Citations omitted]."

The defendant has failed to show that the ultimate end — a constitutional grand jury selection — was not obtained. As the United States Supreme Court said in *Beck v. Washington,* 369 US 541, 555, 82 S Ct 955, 8 L Ed 2d 98, 110, *reh den* 370 US 965 (1962), "we would be exalting form over substance" if we were to set aside this conviction.

The Court of Appeals is affirmed but for the reasons stated in this opinion.