Argued and submitted September 17, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings December 31, 2008

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# CHASON LYNN BRINEY,
*Petitioner on Review.*

# (CC041329M; CA A128505; SC S055567)

200 P3d 550

Garrett A. Richardson, Multnomah Defenders, Inc., Portland, argued the cause and filed the petition for petitioner on review.

Ryan Kahn, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

This case concerns the meaning of the statutory definition of "firearm," ORS 166.210(3), as that term is used in describing the crime of carrying a concealed firearm under ORS 166.250(1)(a), set out *post*. Defendant was charged with carrying a concealed firearm, a pistol, in violation of ORS 166.250(1)(a). In his trial to the court, defendant argued that, because the pistol had a broken firing pin at the time he carried it, it was not "readily capable of use as a weapon" and therefore was not within the statutory definition of a firearm. In response, the trial court ruled that, although the evidence showed that a replacement firing pin was not immediately available to defendant, his pistol nevertheless fell within the statutory definition of a firearm. The trial court convicted defendant of unlawfully carrying a concealed firearm and the Court of Appeals affirmed that judgment without written opinion. *State v. Briney*, 216 Or App 337, 172 P3d 305 (2007). We allowed defendant's petition for review and now, for the reasons that follow, reverse the judgment of the trial court and the decision of the Court of Appeals. We conclude that, in this case, defendant's pistol was not "readily capable of use as a weapon" and, therefore, was not a concealed firearm prohibited under ORS 166.250(1)(a).

The facts are undisputed. In September 2004, Grants Pass Police Officers responded to a report of a possible forced entry into a motor vehicle. At the scene of the reported incident, Officer Peil encountered defendant and two other suspects. Peil asked defendant for consent to search his person. Defendant immediately responded, "All I have is this," and produced a small pistol from his pocket. Defendant gave the pistol to Peil, who identified it as a Raven Arms .25 caliber semi-automatic pistol. The pistol belongs to a group of weapons colloquially known as "Saturday Night Specials," cheaply made handguns typically costing less than $100. The officer examined it, discovering a single round positioned in the chamber and additional rounds in the magazine.

Defendant informed the officer that the pistol lacked a working firing pin, rendering it incapable of firing despite the fact that it was loaded. Peil nevertheless cited defendant

for carrying a concealed firearm in violation of ORS 166.250(1)(a).

Before trial, an Oregon State Police criminalist confirmed defendant's claim that the weapon did not have a working firing pin and could not be fired without one. The criminalist, however, successfully fired the weapon after obtaining and installing a functional firing pin. The parties stipulated that the installation process, once the pin was obtained, would take only a matter of minutes for someone familiar with firearms.

The parties also stipulated that a firing pin that could render the pistol operational was not available at any Grants Pass area gun store at the time of defendant's arrest, but could have been obtained by mail order or over the Internet at a cost of between $5 and $15. Overnight delivery was generally available for an increased fee.

At trial, both parties focused on whether defendant's inoperative pistol was nevertheless "readily capable of use as a weapon," a necessary characteristic for the pistol to be considered a "firearm" as defined in ORS 166.210(3).[1] Defendant argued that, because a replacement firing pin for the pistol was at least an overnight delivery interval away, the pistol could not "readily" be used as a weapon and therefore fell outside the statutory definition of a "firearm." In response, the state cited several Oregon cases for the proposition that the dispositive factor in determining whether a weapon was "readily capable" of use was not the length of time needed to procure parts to make the weapon operational, but rather the ease with which such a conversion could occur.[2]

---

[1] The text of that definition is set out in full below. At the time of trial, the definition of "firearm" was numbered as ORS 166.210(2). The statute was amended in 2007 and the definition renumbered as ORS 166.210(3), but its text remained unchanged. Or Laws 2007, ch 368, § 1. For ease of reference, this opinion uses the current citation throughout.

[2] The state supported its argument with Court of Appeals decisions. *See, e.g.,* *Olson v. Lampert,* 185 Or App 477, 60 P3d 544 (2002), *rev den,* 355 Or 391 (2003) (holding that a rifle lacking a bolt was "readily capable of use as a weapon," despite the fact that the defendant did not have the bolt and the person holding it refused to relinquish possession); *State v. Goltz,* 169 Or App 619, 10 P3d 955 (2000), *rev den,* 331 Or 583 (2001) (holding that a rational jury could conclude that a disassembled nine-millimeter handgun, with all of the parts on site, could be considered readily capable of being used as a weapon); *State v. Gortmaker,* 60 Or App 723, 655

The trial court agreed with the state, concluding that the Court of Appeals decisions on which the state had relied clearly established that defendant's pistol fell within the statutory definition of a "firearm." In a letter opinion, the trial court wrote:

"There is no question that this gun was capable of being a firearm. It was a firearm absent a firing pin. With the addition of the firing pin, it would have worked as a normal gun would.

" 'Capable' is modified by the word 'readily' in the statute. The State reads this modification as '*easily* capable' and the defense as '*quickly* capable.' Absent case law, the Court would agree with the Defense; but in *Olson v. Lampert*, 185 Or App 477, the Court of Appeals does not concern itself with how quickly or easily defendant could have obtained a bolt to insert into the rifle * * *. Applying this reasoning to our case, it does not depend on how long and difficult it would have been to obtain and install a firing pin to make this gun operable."

(Emphasis in original.)

The trial court subsequently found defendant guilty of unlawfully carrying a "firearm concealed upon the person," ORS 166.250(1)(a), a Class A misdemeanor. As noted, defendant appealed that judgment and the Court of Appeals affirmed it without opinion. We allowed defendant's petition for review to construe the meaning of the term "firearm" in ORS 166.250(1)(a), and more specifically, the meaning of the phrase "readily capable of use as a weapon" as it is used to define a "firearm" in ORS 166.210(3).

■ On review, defendant reiterates his argument that the pistol he carried was not "readily capable of use as a weapon" because (1) it did not have a functional firing pin, and (2) the fastest a replacement could be procured was by overnight delivery following a mail order or Internet purchase. In essence, defendant's position is that, to unlawfully carry a concealed firearm in violation of ORS 166.250(1)(a),

---

P2d 575 (1982), *aff'd on other grounds*, 295 Or 505, 668 P2d 354 (1983) (holding that a pistol that lacked its firing mechanism, which could be replaced in three to four minutes by a gunsmith at a cost of $6, was "readily capable of use as a weapon").

the concealed weapon must either be fully operational at the time that it is being unlawfully carried, or promptly capable of being made so at that time. As set out in greater detail below, the state, for its part, argues that, in this case, "readily capable" should not be read to encompass the sense of immediacy for which defendant argues.

We begin with the text and context of the statutes at issue here using the familiar methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Defendant was convicted of violating ORS 166.250(1)(a), which provides, in part:

> "Except as otherwise provided in this section or ORS 166.260, 166.270, 166.274, 166.291, 166.292, or 166.410 to 166.470, a person commits the crime of unlawful possession of a firearm if the person knowingly:

> "(a) Carries any firearm concealed upon the person[.]"[3]

"Firearm," in turn, is defined in ORS 166.210:

> "As used in ORS 166.250 to 166.270, 166.291 to 166.295 and 166.410 to 166.470:

> "* * * * *

> "(3) 'Firearm' means a weapon, by whatever name known, which is designed to expel a projectile by the action of powder and which is *readily capable* of use as a weapon."

(Emphasis added.)

The statute's first requirement that the pistol be designed to expel a projectile is not at issue here. Defendant's pistol, despite being cheaply manufactured and distributed, functions like any other firearm, and the parties have stipulated to that fact. The parties also agree that, for purposes of this case, the phrase "use as a weapon" refers to only the employment of a firearm to fire bullets.[4]

---

[3] The provision does not apply to persons "licensed under ORS 166.291 and 166.292 to carry a concealed handgun." ORS 166.260(1)(h).

[4] At least one Court of Appeals decision has read "use as a weapon" in an extremely broad manner, concluding that it means use as any kind of weapon, such as a small club. *See State v. Hash*, 34 Or App 281, 285, 578 P2d 482 (1978), *rev den*, 284 Or 1 (1978) (so stating). Here, however, the state notes that, "for the purposes of this case, this court need evaluate 'firearm' only in terms of its capability to be used as a *gun*." (Emphasis in original.)

The statute's second requirement, however, presents an issue of first impression for this court: In considering the crime of unlawfully carrying a concealed firearm, when is a firearm "readily capable of use as a weapon"? Because the legislature has not defined "readily" or "capable" as those terms are used in ORS 166.210(3), and because those words are words of common usage, we give them their plain, ordinary meaning. *PGE*, 317 Or at 611. The most common definition of "capable" in use today is "constituted, situated, or characterized as susceptible or open to being affected." *Webster's Third New Int'l Dictionary* 330 (unabridged ed 2002). A pistol that lacks a working firing pin is nevertheless "susceptible or open to being affected" by the relatively minor repair of reinstalling a new firing pin that would allow the pistol to function as designed; thus such a pistol is "capable" of use as a weapon.

Here, however, as the trial court recognized, the word "readily" is an adverb that modifies the adjective "capable." Under the dictionary definition that is most applicable in this case, "readily" means:

> "**a** : with prompt willingness : without hesitating, quibbling, or delaying: with alacrity : WILLINGLY * * * **b** : with fairly quick efficiency : without needless loss of time : reasonably fast : SPEEDILY * * * **c** : with a fair degree of ease : without much difficulty : with facility: EASILY * * *."

*Id.* at 1889.

Defendant argues from that definition that his pistol was not "readily" capable of use as a weapon because it could not, with reasonable speed, be made capable of firing. The state responds that the term "readily" does not mean "immediately" and contrasts the phrases "readily capable" and "presently capable" as they are used in ORS 161.015 to support its argument. The state notes that the legislature has defined "dangerous weapon" in ORS 161.015(1) as

> "any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is *readily capable* of causing death or serious physical injury."

(Emphasis added.) At the same time, the state continues, the legislature has defined "deadly weapon" in ORS 161.015(2) as

> "any instrument, article or substance specifically designed for and *presently capable* of causing death or serious physical injury."

(Emphasis added.) In a nutshell, the state contends that, because "readily capable" and "presently capable" are applied in different ways within the same statute, the two phrases must have different meanings. Under the state's theory, because "presently" implies immediacy, "readily" must contemplate a less immediate, more flexible standard. The state therefore argues that the term should be read to imply relative promptness and ease, a condition that was present in this case because the replacement firing pin—although not immediately at hand—was nevertheless (1) generally available, (2) relatively cheap, and (3) could be installed quickly once procured.

We agree that "readily" does not necessarily mean "immediately," but in our view, the resolution of this case does not turn on that unremarkable proposition. Although the term "readily" may not mean presently or immediately, it encompasses a temporal quality as it used in ORS 166.210(3). Many of the qualifiers used within the dictionary definition, *e.g.*, "with *fairly quick* efficiency," "without *needless loss of time*," and "*reasonably* fast" (emphases added), suggest as much. However, our conclusion in that regard does not, without more, establish that the legislature intended the term's elasticity to encompass the 12- to 24-hour delivery interval that necessarily would have had to have elapsed here before the pistol could have been made capable of use as a weapon.

Consequently, we next examine, as context for the statutes at issue here, earlier versions of Oregon's concealed firearms laws. *See Crocker and Crocker*, 332 Or 42, 49, 22 P3d 759 (2001) (under *PGE* paradigm, court considers earlier versions of statutes at first level of analysis); *Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994) (*PGE* paradigm includes earlier versions of same statute as part of statute's context).

By 1868, Oregon statutes had established a relatively unfettered right (at least for white males) to "have, hold, and keep" a variety of firearms for personal use and protection:

> "Every white male citizen of this state above the age of sixteen years shall be entitled to have, hold, and keep, for his own use and defense, the following fire-arms, to wit: Either or any one of the following-named guns, and one revolving pistol; a rifle, shot-gun (double or single barrel), yager, or musket, the same to be exempt from execution, in all cases, under the laws of Oregon."

General Laws of Oregon 1868, § 1.[5] In 1885, the legislature enacted the state's first general prohibition against carrying *concealed* weapons. Specifically included among a long list of prohibited items was "any revolver, pistol, or other firearm," the use of which could injure the person or property of another:

> "It shall be unlawful for any person to carry concealed about his person in any manner whatever any revolver, pistol, or other firearm, or any knife (other than an ordinary pocketknife), or any dirk or dagger, slung-shot, or metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person."

General Laws of Oregon 1885, § 1.

In 1925, the legislature amended its blanket ban on concealed weapons to allow concealed firearms to be carried with the proper license. At the same time, a provision was added to clarify that a firearm carried openly in a belt holster was not "concealed":

> "Except as otherwise provided in this act, it shall be unlawful for any person within this state to carry concealed upon his person or within any vehicle which is under his control or direction any pistol, revolver or other firearm capable of being concealed upon the person *without having a license to carry such firearm, as hereinafter provided in*

---

[5] Yager is defined, in part, as an obsolete term for a "short-barrelled [*sic*] large-bore rifle of a type formerly popular in the South and Southwest." *A Dictionary of Americanisms On Historical Principles* 1895 (1951).

*section 8 hereof. \* \* \* Firearms carried openly in belt holsters shall not be deemed to be concealed within the meaning of the section."*

General Laws of Oregon 1925, ch 260, § 5 (emphasis added).[6] In creating that regulatory framework, however, the 1925 legislature did not expressly define the term "firearm." It was not until 1977 that the legislature enacted the definition that is the subject of our discussion here.

In 1977, the legislature's definition of "firearm" was set out in ORS 166.210. Except for its references to different kinds of gun powder, that definition was identical to the present definition. Today, definitions for 11 other terms in addition to "firearm" have significantly expanded the content of ORS 166.210. In 1977, however, the statute provided a much smaller set of definitions for use in delineating firearm-related offenses and penalties. As relevant here, the definitional sections of ORS 166.210 (1977) provided:

"As used in ORS 166.230, 166.250 to 166.270, 166.280, 166.290 and 166.410 to 166.470:

"(1)  'Firearm' means a weapon, by whatever name known, which is designed to expel a projectile by the action of black powder or smokeless powder and which is readily capable of use as a weapon.

"(2)  'Pistol,' 'revolver,' and 'firearms capable of being concealed upon the person,' apply to and include all firearms having a barrel less than 12 inches in length."

Although ORS 166.210(1) defined the term "firearm" broadly for purposes of the applicable 1977 statutes, the term itself had a limited application. At the time, when the legislature used "firearm" in a particular provision, the word was consistently coupled with the phrase "capable of being concealed upon the person" and generally accompanied by references to pistols and revolvers—weapons that, by design, were usually more concealable than other firearms, such as

---

[6] A virtually identical provision remains in effect today as ORS 166.250(3): "Firearms carried openly in belt holsters are not concealed within the meaning of [ORS 166.250]."

rifles. Under ORS 166.250(1) (1977), for example, the unlawful concealment of a firearm on one's person was addressed in specific terms to

> "any person who possesses or has in his possession any machine gun, or carries concealed upon his person or within any vehicle which is under his control or direction any *pistol, revolver or other firearm capable of being concealed upon the person,* without having a license to carry such a firearm[.]"

(Emphasis added.) The same was true of the statute prohibiting convicted persons from possessing firearms:

> "Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns, or has in his possession or under his custody or control any *pistol, revolver, or other firearms capable of being concealed upon the person,* or machine gun, commits the crime of exconvict [*sic*] in possession of a firearm."

ORS 166.270(1) (1977) (emphasis added). *See also* ORS 166.230 (1977) (increasing punishment for felonies committed with any "pistol, revolver, machine gun or other firearm capable of being concealed upon the person"); ORS 166.420 (1977) (misdemeanor for gun dealers to sell or transfer a "pistol, revolver, or other firearm, of a size capable of being concealed upon the person" without recording date of sale and manufacturer's number or identifying marks); ORS 166.440 (1977) (misdemeanor for unlicensed persons to sell "any pistol, revolver or other firearm capable of being concealed upon the person"); ORS 166.470 (1977) (misdemeanor for knowingly selling or transferring "any pistol, revolver or other firearm capable of being concealed upon the person" to persons prohibited from lawfully possessing such weapons).

■ The foregoing statutory history helps to identify the legislative policy that underlies the prohibition against carrying a concealed firearm in this state. When the legislature first defined "firearm," its primary focus, demonstrated by its use of the term in ORS chapter 166, was on the actual or potential concealment of such weapons. However, since 1925, the provisions enacted by the legislature to criminalize the

carrying of a concealed weapon have all made clear that "[f]irearms carried openly in belt holsters are not concealed within the meaning of this section." ORS 166.250(3). Had the legislature intended the statutory prohibition against carrying concealed firearms to act as a general restriction on the ability to carry handguns or to serve as the ultimate protection against the use of such weapons, it would not have created, in the same provisions, an exception for firearms carried openly in a holster. The fact that it did, however, evinces a different policy rationale, one aimed at providing notice to those who may come into contact with an individual carrying a firearm.

That rationale—ensuring the public's ability to assess whether a person is presently in possession of a weapon—is the legislative purpose often identified with the enactment of weapons concealment statutes around the country. The Iowa Supreme Court, for example, has stated:

> "We discern the policy underlying the prohibition against concealed weapons to be based on the protection of those persons who may come into contact with a weapon bearer. If a weapon is not concealed, one may take notice of the weapon and its owner and govern oneself accordingly. No such opportunity for cautious behavior or self-preservation exists for one encountering a bearer of a concealed weapon."

*State of Iowa v. Rodney Newsom*, 563 NW2d 618, 619-20 (1997). *See also James Dorelus v. State of Florida*, 747 So 2d 368, 370 (1999) (Florida prohibition against carrying concealed weapons aimed at preventing those with weapons from taking "undue advantage" of unsuspecting adversaries who are not aware the person is carrying a weapon).

■ Given what we believe to be the legislative policy underlying the enactment of the concealed weapons statutes in Oregon, we think that, in order for a firearm to be "readily capable of use as a weapon" for the purposes of ORS 166.250(1)(a), the legislature intended that the firearm either be operational or promptly able to be made so *at the time that an individual is alleged to be unlawfully carrying it concealed*.[7]

---

[7] We note that, although the definition of "firearm" has not changed substantively in over 30 years, the substance and focus of the statutes to which it applies

The record here establishes that a firing pin necessary to make the pistol operational was unavailable locally, and was at least an overnight delivery interval away, approximately 12 to 24 hours. Because the pistol could not promptly be made to fire at the time defendant was alleged to have unlawfully carried it, defendant was not guilty of carrying a concealed firearm in violation of ORS 166.250(1)(a), and the trial court should have granted defendant's motion for judgment of acquittal.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

have. *See, e.g.*, ORS 166.270 (amended 1989) (Class C felony for a convicted felon to possess, have custody of, or control any "firearm"); ORS 166.429 (amended 1989) (Class B felony to ship, transport, receive, sell or otherwise furnishes any "firearm" to another knowing that the weapon will be used in furtherance of a felony); ORS 166.450 (amended 1989) (unlawful to intentionally alter, remove, or obliterate identification number of any "firearm" for an unlawful purpose).