Submitted August 27, affirmed November 12, 2008, petition for review allowed March 4, 2009 (346 Or 65)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEREMY EUGENE TATE,
*Defendant-Appellant.*

Wasco County Circuit Court
0600065CR; A134222

196 P3d 1033

Peter Gartlan, Chief Defender, and Brandon G. Williams, Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Schuman, Judge, and Riggs, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals his conviction for assaulting a public safety officer, which includes, as pertinent here, a "corrections officer." ORS 163.208(1).[1] Defendant asserts that the person he assaulted—a uniformed guard at the Northern Oregon Correctional Facility (NORCOR)—was not a public safety officer because he was not a "corrections officer" within the meaning of ORS 163.208(1). According to defendant, that term is defined by ORS 181.610(5) as a "member of a law enforcement unit." Because the state did not prove that the entity operating the facility, NORCOR, was a "law enforcement unit," defendant reasons, the victim was not a "corrections officer" under the statute, and the trial court erred in denying his motion for judgment of acquittal.[2] We affirm.

We review the trial court's denial of defendant's motion for a judgment of acquittal to determine whether, viewing the facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). Defendant was outside his cell playing cards with other inmates while Officer Buchanan—a uniformed guard employed by NORCOR—was supervising a linen change. An inmate approached Buchanan and began complaining about conditions in the facility. Buchanan told the inmate that he could solve the problem by not coming back to prison. Defendant overheard the exchange and said that another way to solve the problem would be to "kill the officers, kill the judges, kill the cops." Fearing for his safety, Buchanan ordered defendant to cell-in," a command known by inmates to require an immediate return to their cells. Defendant stood up quickly in front

---

[1] ORS 163.208(1) provides:

"A person commits the crime of assaulting a public safety officer if the person intentionally or knowingly causes physical injury to the other person, knowing the other person to be a peace officer, corrections officer, youth correction officer, parole and probation officer, animal control officer, firefighter or staff member, and while the other person is acting in the course of official duty."

[2] Defendant also assigns error to the trial court's refusal to admit into evidence exhibits regarding the corporate status of NORCOR and to the court's refusal to instruct the jury on the definition of "law enforcement unit." Because it is dispositive, we address only defendant's first assignment of error.

of Buchanan and began shaking his head; Buchanan placed his hand on defendant's shoulder. Defendant grabbed Buchanan's shirt, Buchanan grabbed defendant's shirt, and both ended up underneath a table in the middle of the cell block. Defendant began kicking Buchanan in the face, but within seconds other officers arrived, and defendant was subdued. Buchanan suffered bruising to his face and a severe headache, but he was able to return to work.

This prosecution ensued. The state's theory was that Buchanan was a "corrections officer" within the meaning of ORS 163.208(1). Before trial, defendant asked the trial court to instruct the jury on the meaning of the term "corrections officer." Defendant argued that "corrections officer" is defined by ORS 181.610(5) as a "member of a law enforcement unit"; that NORCOR, a private corporation, was not a "law enforcement unit"; and that Buchanan therefore was not a "corrections officer for purposes of ORS 163.208(1)."[3] Defendant relied on our decision in *Haynes v. State of Oregon*, 121 Or App 395, 854 P2d 949 (1993). In accordance with his legal theory, defendant also proffered two documents to show the corporate status of NORCOR.[4]

The trial court denied defendant's request, reasoning that, because ORS 163.208(1) included both the terms "corrections officer" and "staff member," and that only "staff member" was defined with reference to ORS 181.610, the pertinent definition of "corrections officer" was set out in *Haynes*, not in ORS 181.610(5). At the close of the state's case, defendant moved for a judgment of acquittal, reiterating his argument that, because NORCOR was not a "law enforcement unit," Buchanan was not a "corrections officer." The trial court denied the motion.

After resting, defendant again asked the trial court to instruct the jury in accordance with his interpretation of

---

[3] As explained more fully below, we do not reach the question of whether NORCOR is a "law enforcement unit" under ORS 181.610(12)(a).

[4] Those documents were a certified copy of the assumed business name filed by NORCOR with the Secretary of State and a warranty deed transferring property from a private company to NORCOR, "an Oregon Intergovernmental Corrections Entity."

ORS 163.208. The trial court declined to do so, and the jury convicted defendant. This appeal followed.

In three assignments of error, defendant challenges the trial court's denial of his motion for a judgment of acquittal, its exclusion of his proffered evidence regarding NORCOR's corporate status, and its refusal to give his proposed jury instruction. Each assignment of error reduces to a single issue, namely, defendant's assertion that, in accordance with his interpretation of ORS 163.208(1) and ORS 181.610(5), he could not be guilty of assaulting a public safety officer, because Buchanan was not a member of a "law enforcement unit" and, thus, was not a "corrections officer." So framed, the question is one of statutory interpretation, which we review for errors of law. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993).

As discussed, ORS 163.208(1) provides:

"A person commits the crime of assaulting a public safety officer if the person intentionally or knowingly causes physical injury to the other person, knowing the other person to be a peace officer, corrections officer, youth correction officer, parole and probation officer, animal control officer, firefighter or staff member, and while the other person is acting in the course of official duty."

"Corrections officer" is not defined in ORS 163.208. However, ORS 163.208(4)(b) defines "staff member" as:

"(A) A corrections officer as defined in ORS 181.610, a youth correction officer, a Department of Corrections or Oregon Youth Authority staff member or a person employed pursuant to a contract with the department or youth authority to work with, or in the vicinity of, inmates or youth offenders; and

"(B) A volunteer authorized by the department, youth authority or other entity in charge of a corrections facility to work with, or in the vicinity of, inmates or youth offenders."

ORS 181.610(5), in turn, defines "corrections officer" as:

" 'Corrections officer' means an officer or member of *a law enforcement unit* who is employed full-time thereby and is charged with and primarily performs the duty of custody, control or supervision of individuals convicted of or arrested

for a criminal offense and confined in a place of incarceration or detention other than a place used exclusively for incarceration or detention of juveniles."

(Emphasis added.) Finally, ORS 181.610(12)(a) provides:

" 'Law enforcement unit' means a police force or organization of the state, a city, port, school district, mass transit district, county, county service district authorized to provide law enforcement services under ORS 451.010, Indian reservation, Criminal Justice Division of the Department of Justice, the Department of Corrections, the Oregon State Lottery Commission or common carrier railroad whose primary duty, as prescribed by law, ordinance or directive, is any one or more of the following:

"(A)   Detecting crime and enforcing the criminal laws of this state or laws or ordinances relating to airport security;

"(B)   The custody, control or supervision of individuals convicted of or arrested for a criminal offense and confined to a place of incarceration or detention other than a place used exclusively for incarceration or detention of juveniles; or

"(C)   The control, supervision and reformation of adult offenders placed on parole or sentenced to probation and investigation of adult offenders on parole or probation or being considered for parole or probation.

"(b)   'Law enforcement unit' also means:

"(A)   A police force or organization of a private entity with a population of more than 1,000 residents in an unincorporated area whose employees are commissioned by a county sheriff; and

"(B)   A district attorney's office."

The term "corrections officer" appears twice in ORS 163.208(1): first, in the text of the statute as a discrete category of victim, and second, indirectly, as a subcategory of the definition of another discrete victim category: "staff member." *See* ORS 163.208(4)(b). Defendant asserts that the meaning of "corrections officer" as a discrete victim category is identical to the definition in ORS 181.610(5) that applies to the "corrections officer" subcategory of "staff member." Defendant argues that, in *Haynes*, we held that ORS 181.610

provided the definition of "corrections officer" for purposes of ORS 163.208(1) and that the legislature, through subsequent amendments to the latter statute, "would have provided another source for the definition of 'corrections officer' had it not intended for the definition of 'corrections officer' in ORS 181.610 to apply for purposes of ORS 163.208." Defendant misunderstands our holding in *Haynes*.

■ The petitioner in *Haynes* had been convicted of assaulting a public safety officer after he beat a Children's Services Division juvenile parole officer who had been visiting the petitioner's residence as part of supervising the petitioner's stepson's parole. The petitioner sought postconviction relief, arguing that a juvenile parole officer was not a "corrections officer" under ORS 163.208 and, therefore, his trial counsel's failure to raise that issue had rendered his representation constitutionally inadequate. *Haynes*, 121 Or App at 398. In order to determine whether the petitioner's counsel's performance was inadequate, we were required to construe the term "corrections officer" in ORS 163.208. We noted that "corrections officer" was not legislatively defined, but that "[v]arious statutes describe the functions of a corrections officer. The common characteristic of those statutes is the concept of confinement." *Id.* at 399. We cited ORS 181.610, as well as other statutes containing the term "corrections officer," and concluded that " 'corrections officer' means a person who primarily performs the duty of supervising or controlling an individual who is *confined* in a place of incarceration or detention." *Id.* at 400 (emphasis in original). Thus, although we identified ORS 181.610 as *relevant* to the meaning of "corrections officer," just as we found three other statutes to be relevant, we did not hold that, as used in ORS 163.208(1), the term was *defined* by ORS 181.610. Indeed, if we had so held, the definition of "corrections officer" that we enunciated in *Haynes* would have been superfluous. We reiterate here that "corrections officer," as a discrete victim category under ORS 163.208(1), has the meaning ascribed in *Haynes*; that is, "a person who primarily performs the duty of supervising or controlling an individual who is *confined* in a place of incarceration or detention." *Id.* at 400 (emphasis in original).

Defendant correctly observes that the legislature has amended ORS 163.208 several times since we decided

*Haynes.* Those amendments included the addition, in 2001, of the term "staff member." *See* Or Laws 2001, ch 828, § 1 (amending statute to include term "staff member" and making assaulting a public safety officer a Class C felony). But that amendment is not pertinent here, because the state's theory was not that Buchanan was a "staff member" but, rather, that he was a "corrections officer" under ORS 163.208(1). Defendant's argument that the legislature "acquiesced" to our holding in *Haynes* that "corrections officer" is defined by ORS 181.610 fails first because, as discussed, it mischaracterizes our holding, and, second, because none of the subsequent amendments to ORS 163.208 further defined or modified the victim category of "corrections officer" in a way that is inconsistent with our holding in *Haynes.* Indeed, the most reasonable inference to be drawn from the legislature's failure to further define or modify "corrections officer" in subsequent amendments is that it has approved the definition we gave that term in *Haynes.* In sum, *Haynes* enunciated the applicable meaning of "corrections officer" as a discrete category of victim under ORS 163.208. Accordingly, the state was not required to show that NORCOR was a "law enforcement unit" in order to prove that defendant assaulted a "corrections officer."

■   Applying the pertinent definition of "corrections officer" to the evidence in this case, we conclude that the trial court did not err in denying defendant's motion for a judgment of acquittal. The state presented evidence that Buchanan was supervising individuals in a place of incarceration when defendant assaulted him. That evidence was sufficient to permit the jury to find, beyond a reasonable doubt, that defendant assaulted a "corrections officer" under ORS 163.208(1).

Affirmed.