Argued and submitted September 15, decision of Court of Appeals and judgment of circuit court affirmed November 19, 2009

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## JEREMY EUGENE TATE,
*Petitioner on Review.*

## (CC 0600065CR; CA A134222; SC S056904)

220 P3d 1176

Marc Brown, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services, Salem.

Tiffany Keast, Assistant Attorney General, argued the cause and filed the brief for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

BALMER, J.

**BALMER, J.**

The issue in this criminal case is the proper interpretation of the term "corrections officer" as used in ORS 163.208(1),[1] which defines the crime of "assaulting a public safety officer" to include an assault on a "corrections officer." Defendant assaulted a uniformed guard and employee of Northern Oregon Regional Correctional Facilities (NORCOR), a correctional facility formed pursuant to an intergovernmental agreement between several counties and located in Wasco County. Defendant was charged under ORS 163.208(1), and he responded by arguing that the person whom he assaulted was not a "corrections officer" as that term is used in the statute. Defendant argued that the court should apply the definition of "corrections officer" provided in ORS 181.610(5), which requires, among other things, that the individual be a member of a "law enforcement unit."[2] Because the state had not produced evidence that the victim

---

[1] ORS 163.208(1) provides:

"A person commits the crime of assaulting a public safety officer if the person intentionally or knowingly causes physical injury to the other person, knowing the other person to be a peace officer, corrections officer, youth correction officer, parole and probation officer, animal control officer, firefighter or staff member, and while the other person is acting in the course of official duty."

[2] ORS 181.610(5) provides:

" 'Corrections officer' means an officer or *member of a law enforcement unit who is employed full-time thereby* and is charged with and primarily performs the duty of custody, control or supervision of individuals convicted of or arrested for a criminal offense and confined in a place of incarceration or detention other than a place used exclusively for incarceration or detention of juveniles."

(Emphasis added.) ORS 181.610(12), in turn, defines "law enforcement unit":

"(a) 'Law enforcement unit' means a police force or organization of the state, a city, port, school district, mass transit district, county, county service district authorized to provide law enforcement services under ORS 451.010, Indian reservation, Criminal Justice Division of the Department of Justice, the Department of Corrections, the Oregon State Lottery Commission or common carrier railroad whose primary duty, as prescribed by law, ordinance or directive, is any one or more of the following:

"* * * * *

"(B) The custody, control or supervision of individuals convicted of or arrested for a criminal offense and confined to a place of incarceration or detention other than a place used exclusively for incarceration or detention of juveniles[.]

"(b) 'Law enforcement unit' also means:

was a member of a "law enforcement unit," defendant argued, the victim did not qualify as a "corrections officer" under ORS 163.208(1). The trial court concluded that the statute required the state to prove only that the victim was a person charged with the care and custody of incarcerated individuals and that membership in a law enforcement unit was not necessary to qualify as a "corrections officer" under the statute. Defendant appealed, and the Court of Appeals affirmed. *State v. Tate*, 223 Or App 636, 196 P3d 1033 (2008). We allowed review and now affirm.

Defendant, an inmate housed at NORCOR, was sitting outside his cell playing cards. The victim, a uniformed guard, was supervising inmates who were performing a linen exchange. Another inmate approached the victim and complained that the inmates in his cell block were "being discriminated against." The victim responded that the inmate should contact his attorney. Defendant overheard the conversation and responded that "another way" to solve the inmate's problem would be to "[k]ill the officers, kill the judges, and kill the cops." Feeling threatened, the victim ordered defendant to return to his cell immediately. Defendant refused, remaining in his seat; the victim approached defendant from behind and put his hand on defendant's shoulder. Defendant spun around quickly and stood up in what the victim described as a "threatening manner." The victim grabbed defendant's shirt, and, at the same time, defendant grabbed the victim's shirt. The two somehow ended up under a table, and defendant began "punching and kicking" the victim. Soon after, other officers arrived and subdued defendant.

Based on that incident, the state charged defendant with assaulting a public safety officer—specifically, a "corrections officer"—under ORS 163.208(1). Before trial, defendant argued that the jury should be instructed that the term "corrections officer" has the meaning given to that term in ORS 181.610(5), which requires, among other things, that the individual be a member of a "law enforcement unit," a term

"(A) A police force or organization of a private entity with a population of more than 1,000 residents in an unincorporated area whose employees are commissioned by a county sheriff; and

"(B) A district attorney's office."

defined by ORS 181.610(12). Defendant further argued that NORCOR, as "a consortium or a partnership of county governments," was not a law enforcement unit as defined by ORS 181.610(12) and, as a result, that the victim was not a corrections officer. To support that argument, defendant offered two documents to demonstrate the corporate status of NORCOR.[3] The court concluded that the state need not demonstrate that the victim was a member of a law enforcement unit to demonstrate that he was a corrections officer under ORS 163.208(1). It therefore excluded defendant's exhibits as irrelevant.

The following day, the parties again discussed the jury instructions with the court. The state had submitted, as part of its requested jury instructions, Uniform Criminal Jury Instruction 1400, which defines corrections officer as outlined in ORS 181.610(5) and includes the requirement that the individual be a member of a law enforcement unit. Defendant did not object to that instruction, but requested that the court also include an instruction defining law enforcement unit. Ultimately, the court gave the state's proffered instruction, stating, "I don't think Jury Instruction 1400 is a correct statement of the law, but it's been requested by both sides, so I'll give it." The court refused, however, to provide an additional instruction defining law enforcement unit.

At the close of the state's case, defendant moved for a judgment of acquittal, again arguing that only a member of a law enforcement unit can qualify as a corrections officer under ORS 163.208(1). Because the state had not demonstrated that NORCOR was a law enforcement unit, defendant argued, it had not proved one of the elements of the crime—that the victim was a corrections officer. The trial court again concluded that an individual need not be a member of a law enforcement unit to qualify as a corrections officer under ORS 163.208(1). It therefore denied defendant's motion.

---

[3] Specifically, defendant offered the certified assumed business name registration that NORCOR had filed with the Secretary of State and a warranty deed that had transferred property from a private company to NORCOR, an "Oregon Intergovernmental Corrections Entity."

Defendant appealed, assigning error to the trial court's denial of his motion for judgment of acquittal, to its exclusion of his proffered evidence regarding NORCOR, and to its refusal to give a jury instruction defining law enforcement unit. The Court of Appeals affirmed, concluding that all three assignments of error presented a single issue: the proper interpretation of the term "corrections officer" as used in ORS 163.208(1). The court relied on its previous decision in *Haynes v. State of Oregon*, 121 Or App 395, 854 P2d 949 (1993), where the court had held that a juvenile parole officer was not a corrections officer for purposes of ORS 163.208(1). In *Haynes*, the court examined the text and context of ORS 163.208 and concluded that, for purposes of that statute, a "corrections officer" is "a person who primarily performs the duty of supervising or controlling an individual who is confined in a place of incarceration or detention." *Id.* at 400 (emphasis omitted). Applying that definition to this case, the Court of Appeals concluded that there was sufficient evidence from which the jury could find that the victim here was a corrections officer. *Tate*, 223 Or App at 643. Defendant petitioned for review, and we allowed review to determine the meaning of corrections officer as used in ORS 163.208(1).

On review, defendant renews his argument that this court should look to ORS 181.610(5) for the meaning of the term "corrections officer" in ORS 163.208(1), that the victim in this case therefore could be a corrections officer only if he was a member of a law enforcement unit, and that the state failed to prove that NORCOR was a law enforcement unit, as defined by ORS 181.610(12).[4] The state responds that the Court of Appeals correctly held that *Haynes* provides the relevant definition and that the victim qualified as a corrections officer under that definition. The state further argues that, even if ORS 181.610(5) provides the relevant definition, the victim here qualified as a corrections officer.

As previously noted, ORS 163.208(1), the statute under which defendant was convicted, provides:

---

[4] Defendant makes no argument that the victim was an employee of a private entity or that NORCOR was a business or other private corporation, rather than a government entity.

"A person commits the crime of assaulting a public safety officer if the person intentionally or knowingly causes physical injury to the other person, knowing the other person to be a peace officer, corrections officer, youth correction officer, parole and probation officer, animal control officer, firefighter or staff member, and while the other person is acting in the course of official duty."

ORS 163.208(1) essentially elevates an assault that would otherwise be a Class A misdemeanor, *see* ORS 163.160(1), (2) (defining "[i]ntentionally, knowingly or recklessly caus[ing] physical injury to another" as fourth-degree assault, a Class A misdemeanor), to a Class C felony when the victim is a "corrections officer" or one of the other persons described in the statute. *See* ORS 163.208(2) ("Assaulting a public safety officer is a Class C felony.").

■     Corrections officer is not defined in ORS 163.208(1), and we therefore first look to the plain and ordinary meaning of the term. *See State v. Briney*, 345 Or 505, 511, 200 P3d 550 (2008) (court gives words of common usage their plain, ordinary meaning). Although the dictionary contains no definition for "corrections officer," it defines each word separately: an "officer" is "one charged with administering and maintaining the law (as a constable, bailiff, sheriff)," and "correction" is "the treatment of offenders through a program involving penal custody, parole, and probation." *Webster's Third New Int'l Dictionary* 511, 1567 (unabridged ed 2002).[5] Thus, the dictionary defines a corrections officer as one charged with administering and maintaining the law as it relates to penal custody, parole, and probation.

Although the definitions in the dictionary would include parole and probation officers within the definition of corrections officer, we agree with the Court of Appeals that the statutory context illustrates that the legislature did not intend to sweep so broadly. *See Tate*, 223 Or App at 642 (discussing description of related statutes in *Haynes*, 121 Or App at 399-400). Many statutes use the term "corrections officer,"

---

[5] *Webster's* notes that "correction" is "often used in pl[ural] ‹training in the techniques of casework, probation and parole, and the general field of *corrections* * * *›." *Webster's Third New Int'l Dictionary* 511 (unabridged ed 2002) (emphasis in original).

and the term is defined differently for use in different statutes. *See* ORS 181.610(5); ORS 802.253(1)(b) (each defining term differently). One consistency in the legislature's use of the term, however, is that corrections officers control or supervise individuals who are *confined* by the state in some sort of facility. For example, ORS 181.610(5) defines corrections officer as one who "primarily performs the duty of custody, control or supervision of individuals * * * *confined* in a place of incarceration or detention * * *." (Emphasis added.) Similarly, ORS 802.253(1)(b) defines a corrections officer as a person "employed in a correctional facility * * * who primarily performs the duty of custody, control or supervision of individuals convicted of a criminal offense." "Correctional *facility*," in turn, is defined as an "institution used for the *confinement* of persons convicted of a criminal offense or held by court order." ORS 802.253(1)(a) (emphasis added). *See also* ORS 166.260(1)(g) (unlawful possession of a firearm does not apply to a "corrections officer while transporting or accompanying an individual convicted of or arrested for an offense and *confined in a place of incarceration or detention*" (emphasis added)).

In other words, a corrections officer, as that term is used in ORS 163.208(1), is not, as the dictionary states, a person charged with administering and maintaining the law as it relates to penal custody, *parole, and probation*; instead, related statutes demonstrate that the legislature used the term to describe one charged with administering and maintaining the law as it relates to penal *custody* only. That intent is further demonstrated by the fact that the legislature consistently distinguishes between corrections officers and parole and probation officers, rather than including parole and probation officers within the term "corrections officer." *See, e.g.*, ORS 163.208(1) (assaulting a public safety officer includes assaults on "corrections officer[s]" and "parole and probation officer[s]").

In sum, after analyzing the plain meaning of the text of ORS 163.208(1) and the context provided by related statutes, we agree with the Court of Appeals that a corrections officer, as that term is used in ORS 163.208(1), is one who is charged with supervising or controlling individuals confined

in a place of incarceration or detention. So understood, a uniformed guard at NORCOR would qualify.

■        Defendant argues that we should disregard the ordinary meaning of the term "corrections officer" and apply the definition given to that term in ORS 181.610(5). As noted, that statute provides:

> " 'Corrections officer' means an officer or *member of a law enforcement unit who is employed full-time thereby* and is charged with and primarily performs the duty of custody, control or supervision of individuals convicted of or arrested for a criminal offense and confined in a place of incarceration or detention other than a place used exclusively for incarceration or detention of juveniles."

(Emphasis added.) ORS 181.610(12) then defines "law enforcement unit" as

> "a police force or organization of the state, a city, port, school district, mass transit district, *county*, county service district authorized to provide law enforcement services under ORS 451.010, Indian reservation, Criminal Justice Division of the Department of Justice, the Department of Corrections, the Oregon State Lottery Commission or common carrier railroad whose primary duty, as prescribed by law, ordinance or directive, is any one or more of the following:
>
> "* * * * *
>
> "(B)   The custody, control or supervision of individuals convicted of or arrested for a criminal offense and confined to a place of incarceration or detention other than a place used exclusively for incarceration or detention of juveniles[.]"

(Emphasis added.) Defendant argues that NORCOR is not a law enforcement unit because it is not an organization of any of the entities identified in the statute and, in particular, that it is not an organization of "*a* * * * *county*," ORS 181.610(12) (emphasis added). Instead, defendant asserts, NORCOR is an organization created by *multiple* county governments, and its activities are managed by a board of directors, rather than a single county government official. As a result, he argues, the victim was not a member of a law enforcement

unit and was thus not a corrections officer under ORS 163.208(1).

Defendant acknowledges that the definitions contained in ORS 181.610, by that statute's express terms, apply to ORS 181.610 to 181.712—not to ORS 163.208. He nonetheless argues that the statutory context demonstrates that the legislature intended those definitions to apply to ORS 163.208(1) as well. Specifically, he points to the definition of "staff member" in ORS 163.208(4)(b). ORS 163.208(1), as noted, applies to an assault on certain identified persons, including corrections officers, parole and probation officers, and "staff member[s]." The statute then defines a "staff member" as

"(A) *A corrections officer as defined in ORS 181.610,* a youth correction officer, a Department of Corrections or Oregon Youth Authority staff member or a person employed pursuant to a contract with the department or youth authority to work with, or in the vicinity of, inmates or youth offenders; and

"(B) A volunteer authorized by the department, youth authority or other entity in charge of a corrections facility to work with, or in the vicinity of, inmates or youth offenders."

ORS 163.208(4)(b) (emphasis added).

Defendant concedes that he was charged with assaulting a *corrections officer* under ORS 163.208(1), rather than a *staff member*; he nonetheless argues that the definition of staff member provides context for interpreting the term "corrections officer" as it is used earlier in the same statute. His argument is as follows: the legislature used the same term—corrections officer—in two different provisions of ORS 163.208; in one provision (ORS 163.208(4)(b), the definition of staff member), corrections officer has the definition ascribed to it in ORS 181.610; therefore, the legislature must have intended corrections officer to have that meaning in the other provision (ORS 163.208(1), the list of individuals that qualify as victims, including staff members) as well.

Defendant's argument is flawed. As originally enacted, ORS 163.208(1) defined assault on a public safety officer as an assault on a "peace officer, corrections officer or

firefighter." ORS 163.208(1) (1981). The statute then, as now, contained no definition of corrections officer, nor did it provide any cross-references to any other statute defining that term. The legislature then added the category and definition of "staff member" to the statute in 2001. Or Laws 2001, ch 828, § 1. Defendant concedes, and we agree, that the legislature did not change the meaning of corrections officer, as used in ORS 163.208(1), when it added the definition of staff member; indeed, the legislature has not amended that part of the statute since it enacted the statute in 1981. *See* Or Laws 1981, ch 783, § 2 (enacting statute). The terms that the legislature used when it amended ORS 163.208 in 2001 provide little to no context for understanding what the legislature intended when it *originally* enacted the statute in 1981. Because the legislature has not altered the meaning of corrections officer in ORS 163.208(1) since 1981, the later-enacted staff member provision provides little interpretive value. *See State v. Gaines*, 346 Or 160, 177 n 16, 206 P3d 1042 (2009) ("Ordinarily, only statutes enacted simultaneously with or before a statute at issue are pertinent context for interpreting that statute.").

Moreover, and even if we were to assume that the 2001 amendment provides relevant context, we do not agree with defendant that the amendment supports his interpretation of corrections officer. Indeed, the legislature expressly stated that " '[s]taff member' means * * * [a] corrections officer *as defined in ORS 181.610*," ORS 163.208(4)(b) (emphasis added), but it did not similarly provide that the term "corrections officer," as used in ORS 163.208(1), should be so defined. That indicates—if it indicates anything at all—that the legislature did *not* intend corrections officer, as used in ORS 163.208(*1*), to be defined by ORS 181.610. *See King Estate Winery, Inc. v. Dept. of Rev.*, 329 Or 414, 422, 988 P2d 369 (1999) ("[U]se of a term in one section and not in another section of the same statute indicates a purposeful omission."). The legislature did not use "identical terms" in two separate provisions of ORS 163.208, as defendant argues. Instead, the legislature used the term "corrections officer" in ORS 163.208(1), whereas it used the term "corrections officer as defined in ORS 181.610" in ORS 163.208(4)(b)(A).

■        We therefore conclude that, to obtain a conviction for assaulting a public safety officer under ORS 163.208, the state was not required to produce evidence that the victim met the definition of corrections officer given in ORS 181.610(5) or that NORCOR was a law enforcement unit as defined in ORS 181.610(12).[6] The state instead was required to prove only that the victim was charged with supervising or controlling individuals confined in a place of incarceration or detention. The state introduced evidence that the victim in this case was a government employee trained in corrections, that he worked in a correctional facility owned and operated by the government and designed to house people convicted of crimes, and that one of his job duties was supervising individuals housed in that facility. A reasonable jury could have concluded that the victim was a corrections officer under ORS 163.208(1), and the trial court correctly denied defendant's motion for a judgment of acquittal.[7]

We now turn to defendant's remaining arguments— that the trial court erred in excluding defendant's proffered evidence and that the trial court erred in refusing to provide an additional jury instruction defining the term "law enforcement unit." Because the state was not required to prove that

---

[6] Because we conclude that the state was required to prove only that the victim was charged with supervising or controlling individuals confined in a place of incarceration or detention, we express no opinion as to whether NORCOR is a law enforcement unit under ORS 181.610(12).

[7] We note that the jury was not properly instructed as to the definition of corrections officer; the trial court instructed the jury based on the definition contained in ORS 181.610(5), including the requirement that the individual be a member of a law enforcement unit. The court nonetheless correctly denied defendant's motion for judgment of acquittal by concluding, based on the proper interpretation of corrections officer in ORS 163.208(1), that the state had provided sufficient evidence to convict defendant under that statute. The trial court considers a motion for a judgment of acquittal before the jury is instructed and before the jury reaches its verdict; the jury instructions are not relevant to whether a motion for judgment of acquittal was properly denied. See ORS 136.445 ("In any criminal action the defendant may, after close of the state's evidence or of all the evidence, move the court for a judgment of acquittal. The court shall grant the motion if the evidence introduced theretofore is such as would not support a verdict against the defendant."); State v. King, 307 Or 332, 339, 768 P2d 391 (1989) ("In ruling on the sufficiency of the evidence in a criminal case, the relevant question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found *the essential elements of the crime* beyond a reasonable doubt." (Emphasis added.)).

NORCOR was a law enforcement unit, the evidence regarding NORCOR's corporate status was properly excluded as irrelevant. For the same reason, the court was not required to instruct the jury on the meaning of law enforcement unit, as defendant requested.[8]

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[8] As noted, the trial court's instruction regarding the definition of corrections officer was incorrect. However, defendant did not argue before the trial court—nor does he argue on appeal—that the instruction given was erroneous; he instead requested that the court give an *additional* instruction defining law enforcement unit. Because including the definition of law enforcement unit also would have resulted in an incorrect statement of the law as to the meaning of "corrections officer" under ORS 163.208, the trial court did not err in refusing to give defendant's requested instruction. *See Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998) ("Regarding a trial court's refusal to give a requested jury instruction, * * * there is no error if the requested instruction is not correct in all respects."). In any event, any jury instruction error was harmless. Had the court properly instructed the jury, it would have used a broader definition of corrections officer. Any person who would be included in the ORS 181.610 definition of corrections officer that the court gave would necessarily be included in the broader definition that we have outlined above.